### In re FLIGHT TRANSPORTATION CORPORATION SECURITIES LITIGATION.

**Master Docket No. 4-82-874.**
**MDL No. 517.**

United States District Court,
D. Minnesota,
Fourth Division.

Dec. 28, 1987.

Dorsey & Whitney, James H. O'Hagan, Minneapolis, Minn., for appellants Drexel Burnham Lambert Inc. and Moseley, Hallgarten, Estabrook & Weeden Inc.

Cahill, Gordon & Reindel, (a partnership including professional corporations) New York City, of counsel, for appellant Drexel Burnham Lambert Inc.

Shearman & Sterling, New York City, of counsel, for appellant Moseley, Hallgarten, Estabrook & Weeden Inc.

Gray, Plant, Mooty, Mooty & Bennett, Edward J. Callahan, Jr., Thomas Darling, Dylan J. McFarland, Minneapolis, Minn., for Greyhound Leasing & Financial Corp.

Robins, Zelle, Larson & Kaplan, Howard Patrick, James R. Safley, Minneapolis, Minn., for Continental Illinois Nat. Bank & Trust Co. of Chicago.

Faegre & Benson, Duane W. Krohnke, Thomas H. Bennin, Minneapolis, Minn., for Norwest Bank Minneapolis, N.A. and Norwest Bank Calhoun-Isles, N.A.

Resnick & Bartsh, P.A., Thomas C. Bartsh, Minneapolis, Minn., for Receiver of Flight Transp. Corp. and its subsidiaries.

Best & Flanagan, James C. Diracles, Frank Vogl, Minneapolis, Minn., for Putnam High Yield Trust, United High Income Fund, Inc. and Oppenheimer High Yield Fund, individually and as certified class representatives of Subclass IV (Unit Purchasers).

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

Presently before the court are several petitions and supplemental petitions for the award of fees to counsel representing the plaintiff classes in the massive Flight Transportation Corporation ("FTC") securities-fraud litigation. The background facts are set forth in *In Re Flight Transportation Corp. Securities Litigation*, 730 F.2d 1128 (8th Cir.1984), *cert. denied*, 469 U.S. 1207, 105 S.Ct. 1169, 84 L.Ed.2d 320 (1985), the factual portion of which is attached as Exhibit A. Suffice it to say that the underlying litigation to this action involved a series of complaints alleging that FTC's directors and officers, attorneys, accountants, bankers, underwriters, and insurers engaged in a scheme which, *inter alia*, enabled FTC to sell its securities at artificially inflated values. The complaints were filed by representatives of a class of plaintiffs comprised of all persons who purchased FTC securities during the period from November 30, 1979 to June 18, 1982. FTC's securities holders were certified as a class, and this class was divided into five subclasses. A complex "Sharing Agreement" was drafted providing for the distribution of money among the creditors and securities holders of FTC, which is in bankruptcy. This Sharing Agreement was amended several times. Counsel for the class made vigorous efforts to settle claims against groups of defendants. Some of the more prominent settlements which have been approved by the Court and are now final are with the following defendants: (1) Alexander and Alexander, Inc., Alexander and Alexander Services, Inc. (FTC's aircraft insurance carrier), Drexel, Burnham, Lambert, Inc. and Moseley, Hallgarten, Estabrook and Weeden, Inc. (the lead underwriters) ("Drexel–Moseley"), Evanston Insurance Company and Wardwell M. Montgomery, Ezell Jones, Marjorie Terhaar, Russell T. Lund, Jr., Delbert Oldenborg and Larry Walston (FTC's directors and officers and their insurance carrier), Fox and Co. (FTC's auditor), Norwest Bank Minneapolis, N.A., FTC's primary lender, Norwest Bank Calhoun Isles, N.A., an affiliate of Norwest Bank, St. Paul Fire and Marine Insurance Company, Opperman and Paquin (FTC's outside counsel), Reavis and McGrath (legal counsel to certain underwriters for FTC public offerings), William Rubin (FTC's President, Chairman of the Board, and chief executive officer), and Joyce Rubin (William Rubin's estranged wife). As a result of these settlements and others, some $52 million ($52,000,000.00) has been collected in this case to be returned to the shareholders, creditors, unitholders and to pay the expenses of the litigation and counsel fees. Thomas C. Bartsh, appointed by this Court as receiver of FTC and who is also acting as escrow agent for all settlement funds and as one of the claims administrators, anticipates that nearly everyone injured by the FTC securities fraud will receive in excess of 90 cents on the dollar, prior to court-approved costs and attorneys' fees.

Notice was given to members of Subclasses I, II, III and V of a hearing on September 23, 1987, to consider, *inter alia*, applications for allowances of fees and expenses. The notice informed claimants that counsel fees and expenses for attorneys for Subclasses I, II, III and V could reach as high as $10,000,000.00, an amount which would constitute approximately 20% of "Total Recoveries" and interest thereon in this litigation. The notice also afforded claimants the opportunity to object. At the hearing, the sole questions to the amount of counsel fees came in the form of letters from three class members, one of whom appeared in person, asking the court to be cognizant of the total amount of fees requested ($10,000,000.00) as against the total cash received in the settlement ($52,-000,000.00).

Under the "American Rule" each party ordinarily bears its own attorneys' fees. *See Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983); *Perichak v. International Union of Electrical Radio,* 715 F.2d 78, 79 (3d Cir.1983). However, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980); *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *Sprague v. Ticonic National Bank,* 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); *Trustees v. Greenough,* 105 U.S. (15 Otto) 527, 26 L.Ed. 1157 (1881). In a class action, the attorneys who create a settlement fund are entitled to be compensated from that fund for their services to the class. *See Silberman v. Bogle,* 683 F.2d 62, 64 (3d Cir.1982); *Lindy Brothers Builders, Inc. v. American Radiator and Standard Sanitary Corp.,* 540 F.2d 102, 110 (3d Cir.1976) (in banc) ("Lindy II"); *Lindy Brothers Builders, Inc. v. American Radiator and Standard Sanitary Corp.,* 487 F.2d 161, 165 (3d Cir.1973) ("Lindy I"). Because of the inevitable conflict of interest between the attorneys for Rule 23(b)(3) class members and the class members created by allowing attorneys' fees from the fund, fee requests from the fund in court must be subjected to heightened judicial scrutiny. *See, e.g., In re Fine Paper,* 751 F.2d 562, 583 (3d Cir. 1984).

The determination of the amount of a fee award is primarily committed to the discretion of the district court. *See Blum v. Stenson,* 465 U.S. 886, 896–97, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984); *Black Grievance Committee v. Philadelphia Electric Co.,* 802 F.2d 648, 651 (3d Cir. 1986).

The "logical beginning" is to determine the lodestar which is the reasonable number of hours expended, multiplied by the normal billing rate. *Lindy I* at 167; *see also In Re Fine Paper* at 583. "The formulation [of the lodestar] suggests a twin inquiry into reasonableness: a reasonably hourly rate *and* a determination of whether it was reasonable to expend the number of hours in a particular case." *Ursic v. Bethlehem Mines,* 719 F.2d 670, 676 (3d Cir.1983).

Pursuant to Pretrial Order No. 245, petitions for attorneys' fees were filed by the 28 firms representing the plaintiff class in this matter. In anticipation of these fee petitions, the Court appointed a Fee Review Committee consisting of Thomas C. Bartsh, Esquire, Jack L. Chestnut, Esquire and Leonard Barrack, Esquire to audit the number of hours expended by each firm and each firm's hourly rates. In their petitions, the 28 firms sought fees for services performed in this matter from June, 1982 through September, 1985. The petitions, including the affidavits in support thereof, set forth in detail the time expended by each firm, the work accomplished, and counsels' hourly rates. After auditing the fee petitions, the Fee Review Committee in May of 1987, filed a recommendation with the Court with respect to the lodestar amount of fees. Through the efforts of the Fee Review Committee, many of the 28 firms agreed to substantial reductions in the original lodestar figure each firm had requested in their respective petitions. These reductions were reflected in the recommended lodestar amount of fees submitted to the Court by the Fee Review Committee. Having found the recommended lodestar amount of fees for each firm to be fair and reasonable, we approved lodestar fees in the amount of $4,569,-317.00 and ordered payment of 40% thereof pursuant to Pretrial Order No. 287 which was entered on May 24, 1987. A copy of this Order with exhibits describing the breakdown of the approved lodestar fees is attached as Exhibit B.

Pursuant to Pretrial Order No. 245, five of the 28 firms representing the plaintiff class have filed supplemental petitions for attorneys' fees for services performed in this litigation from September 1985 to April 1987. These supplemental petitions, like the original petitions, set forth in detail the time expended by each of the five firms, the additional work accomplished by each

firm from September, 1985 to April 1987, and counsels' hourly rates. The supplemental requests for fees were also audited by the Fee Review Committee and, in October of 1987, the Fee Review Committee filed a recommendation with the Court with respect to the lodestar amount of fees. Through the efforts of the Fee Review Committee, all five firms agreed to reductions in the original lodestar figure each firm had requested in their respective petitions. These reductions are reflected in the recommended lodestar amount of fees submitted to the Court by the Fee Review Committee. Finding the recommended lodestar amount of fees for each of the five firms to be fair and reasonable, we approve additional lodestar fees in the amount of $327,423.99 for services performed from September 1985 through April 1987. These additional lodestar fees break down as follows:

| Name of Firm | Court Approved Lodestar From 6/87–8/85 | Court Approved Lodestar From 9/85–4/87 |
| --- | --- | --- |
| BARRACK RODOS & BACINE | $509,729.00 | $ 35,998.75 |
| CHESTNUT & BROOKS | 674,475.00 | 152,130.50 |
| COCHRANE & BRESNAHAN | 253,106.00 | 11,161.24 |
| SACHNOFF, WEAVER & RUBENSTEIN | 532,585.00 | 57,750.00 |
| WOLF, HALDENSTEIN, ADLER, FREEMAN & HERZ | 500,646.00 | 70,383.50 |

Pursuant to Pretrial Order No. 245, three of the 28 firms representing the plaintiff class have filed supplemental petitions for attorneys' fees for services performed in this litigation from April, 1987 to September 23, 1987. These supplemental petitions, like the original petitions, set forth in detail the time expended by each of the three firms, the additional work accomplished by each firm from April, 1987 to September 23, 1987, and counsels' hourly rates. These supplemental requests for fees were also audited by the Fee Review Committee and, in October of 1987, the Fee Review Committee filed a recommendation with the Court with respect to the lodestar amount of fees. Through the efforts of the Fee Review Committee, all three firms agreed to reductions in the original lodestar figure each firm had requested in their respective petitions. These reductions are reflected in the recommended lodestar amount of fees submitted to the Court by the Fee Review Committee. Finding the recommended lodestar amount of fees for each of the three firms to be fair and reasonable, we approve additional lodestar fees in the amount of $46,309.00 for services performed from April, 1987 to September 23, 1987. These additional lodestar fees break down as follows:

| Name of Firm | Court Approved Lodestar From 9/85–9/23/87 |
| --- | --- |
| BARRACK RODOS & BACINE | $ 6,125.00 |
| CHESTNUT & BROOKS | 38,523.00 |
| WOLF, HALDENSTEIN, ADLER, FREEMAN & HERZ | 1,661.00 |

Counsel for the Class are entitled to reasonable fees for their efforts in creating the substantial settlement fund. Determining the lodestar is the first step in determining the reasonable fee for each petitioner; the court must also determine factors, if any, that warrant reducing or enhancing the lodestar. The burden of showing that enhancement is warranted is on the fee applicant. *Blum v. Stenson,* 465 U.S. 886, 898, 104 S.Ct. 1541, 1548–49, 79 L.Ed.2d 891 (1984).

The court may adjust the lodestar first to reflect the contingent nature of the attorneys' undertaking, *Lindy I,* 487 F.2d at 168. This contingency adjustment involves two separate aspects. The first aspect to be determined is the likelihood of success in obtaining a judgment or settlement in the underlying lawsuit, to be measured at the point when the attorney's time was committed to the case. *Id.; Lindy II,* 540 F.2d at 113. The second aspect is the time value of compensation long delayed, when compared with normal billing and collection practices of law firms for fees and expenses. We explicitly recognized in *Lindy II* that the contingency factor must take into account delay in receipt of payments. 540 F.2d at 117. *See also Copeland v. Marshall,* 641 F.2d 880, 893 (D.C. Cir.1980)....

Finally, we require that the court may adjust the amount determined in the lodestar calculation for the quality of the attorney's work. *Lindy I,* 487 F.2d at 168. Quality must be evaluated in light of the results obtained for the class considering the complexity of the case, and

the professional methods utilized in processing the case—rewarding the use of efficient methods to expedite the case and penalizing the use of methods the predominant purpose of which was to delay or obstruct the proceedings. *Lindy II*, 540 F.2d at 118.

*In Re Fine Paper*, 751 F.2d at 583. Included among the considerations that may lead the district court to adjust the fee up or down is the important factor of the "results obtained." *See Hensley*, 461 U.S. at 434, 103 S.Ct. at 1940.

The fact that counsel for the plaintiff classes prosecuted this case on a contingent fee basis warrants a multiplier of the lodestar. Counsel undertook the representation of classes in this action which represented certain unusual factual and legal complexities. The existence and/or extent of defendants' liability was not clear, and damages were uncertain and difficult to prove. Counsel risked time and effort, including the time and effort of hundreds of lawyers and paralegals, and advanced substantial costs with no ultimate guarantee of compensation. In addition, all fees and reimbursement of expenses were deferred until the outcome of the litigation, rather than paid currently as in non-contingent litigation. It should be noted that counsel were under the risk of never receiving compensation for their time and effort from as early as June of 1982 until April of 1987, when the United States Supreme Court denied certiorari on appeal from the United States Court of Appeals for the Eighth Circuit.

We determine that the quality of the services performed by counsel for the plaintiff class and the result obtained for the class also warrants a multiplier of the lodestar. This case involved complex issues of law and fact which presented numerous risks inherent in establishing liability of the defendant. Liability of defendants was vigorously contested by defense counsel. This case involved the interrelationship between creditors, bondholders and unitholders, all of whom desired to have their share from any recovery but disagreed as to how any recovery would be shared among themselves. Counsel negoti-

ated a novel and complex "Sharing Agreement" which provided for the distribution of money among the creditors and securities holders of FTC. This Sharing Agreement had to be amended several times. In addition, over 18 settlements were made with groups of defendants. Some of the more prominent of these 18 settlements are described *supra*. As a result of these efforts, a recovery of some $52,000,000.00 was obtained for the classes representing creditors, shareholders and unitholders of FTC and to pay the expenses of litigation and counsel fees. There is a high probability that all claimants will receive in excess of 90 cents on the dollar on the basis of this recovery which is one of the largest recoveries ever to come back to individual stockholders from a securities fraud case as blatant as this one. If the parties had been required to litigate through trial and appeal, many more hours would have been expended by counsel, possibly with no greater result for the classes.

The Fee Review Committee has recommended that 16 of the 28 firms representing the classes be given multiplier consideration based on the quality of services performed by these 16 firms, the results these firms obtained for the classes and the fact that all 16 prosecuted this action on a contingent fee basis. Accordingly, the court determines the multiplier for each of the 16 firms as follows:

### 1. *Abbey and Ellis*

Abbey and Ellis took many depositions in this litigation and was instrumental in reaching the settlement agreement with Reavis and McGrath, the law firm which served as legal counsel to certain underwriters for FTC public offerings. The Fee Review Committee has recommended that Abbey and Ellis receive a multiplier of 1.2. We find a multiplier of 1.2 to be reasonable for the quality of services rendered by Abbey and Ellis in this litigation. This court has already approved a lodestar for Abbey and Ellis in the amount of $187,742.00 for services rendered from June, 1982 to September, 1985. Multiplying this lodestar by

1.2 results in a total fee award for Abbey and Ellis in the amount of $225,290.40.

## 2. *Barrack, Rodos and Bacine*

The work of Leonard Barrack, senior partner of Barrack, Rodos and Bacine, in this litigation deserves special praise. Mr. Barrack served as the co-chairman of the Plaintiffs' Discovery Committee. As co-chairman, he arranged and coordinated the many depositions and discovery motions and interrogatories the results of which led many of the defendants to the settlement table. As a member of the "trial team", Mr. Barrack drafted the trial brief in this litigation. He also served as a member of the Fee Review Committee and was instrumental in getting many of the 28 firms representing the classes, including his own, to significantly reduce the lodestars each had requested in their fee petitions. The Fee Review Committee has recommended that Barrack, Rodos and Bacine receive a multiplier of 1.85. We find a multiplier of 1.85 to be reasonable for the quality of services rendered by Barrack, Rodos and Bacine in this litigation. This court has already approved a total lodestar for Barrack, Rodos and Bacine in the amount of $545,727.75 for services rendered from June, 1982 to April, 1987. Multiplying this lodestar by 1.85 results in a subtotal of $1,009,596.33. Adding to this subtotal the additional lodestar of $6,125.00 for services rendered by the Barrack firm from April, 1987 to September 23, 1987 results in a total fee award for Barrack, Rodos and Bacine in the amount of $1,015,721.33.[1]

## 3. *Donald Barry*

Donald Barry, Esq. ably conducted the discovery program against the Opperman and Paquin law firm and its insurance carrier. The work of Mr. Barry in conducting the discovery program was essential in bringing about the settlement between the classes and the Opperman and Paquin law firm which served as FTC's outside counsel. Mr. Barry also assisted the Receiver involving certain assets of FTC in the Cayman Islands. In addition, Mr. Barry was a member of the "trial team" and assisted Leonard Barrack in drafting the trial brief. The Fee Review Committee has recommended that Donald Barry receive a multiplier of 1.5. We find a multiplier of 1.5 to be reasonable for the quality of services rendered by Donald Barry in this litigation. This court has already approved a total lodestar for Donald Barry in the amount of $296,196.00 for services rendered from June, 1982 to September, 1985. Multiplying this lodestar by 1.5 results in a total fee award for Donald Barry in the amount of $444,294.00.

## 4. *Berger and Montague*

Berger and Montague assisted in the discovery program against the Opperman and Paquin law firm. This work played an important role in bringing about the settlement with the Opperman firm and its insurance carrier. The Fee Review Committee has recommended that Berger and Montague receive a multiplier of 1.2. We find a multiplier of 1.2 to be reasonable for the quality of services rendered by Berger & Montague in this litigation. This court has already approved a total lodestar for Berger and Montague in the amount of $182,109.00 for services rendered from June, 1982 to September, 1985. Multiplying this lodestar by 1.2 results in a total fee award for Berger and Montague in the amount of $218,530.80.

## 5. *Bernstein, Litowitz, Berger and Grossman*

Paul Bernstein, Esq. served as co-chairman of the Accountants' Discovery Committee. Mr. Bernstein's work in conducting the depositions against Fox and Co., FTC's auditor, was essential in obtaining a final settlement with Fox and Co. valued at some $5,000,000.00. The Fee Review Committee has recommended that Bernstein, Litowitz, Berger and Grossman receive a multiplier of 1.5. We find a multiplier of

---

**1.** The Fee Review Committee has recommended that the additional lodestar of $6,125.00 not be included in the multiplier calculation.

1.5 to be reasonable for the quality of services rendered by Bernstein, Litowitz, Berger and Grossman in this litigation. This court has already approved a total lodestar for the Bernstein firm in the amount of $269,458.00 for services rendered from June, 1982 to September, 1985. Multiplying this lodestar by 1.5 results in a total fee award for the Bernstein firm in the amount of $404,187.00.

### 6. *Chestnut and Brooks*

The work of Jack Chestnut, Esq. in this litigation was extraordinary. Without the leadership of Mr. Chestnut, it is doubtful that the classes would be in the position to receive such a large recovery so shortly after a fraud of the proportion involved in this case. Mr. Chestnut appeared before this court on numerous occasions concerning various aspects of this litigation. As a result, the court is quite familiar with his significant contributions. As co-chairman of the Plaintiffs' Steering Committee, Mr. Chestnut had the responsibility for approving the overall strategy of this litigation which included assigning tasks to each of the 28 law firms working on behalf of the plaintiff classes. He helped negotiate the Sharing Agreement. He was the driving force behind all of the major settlements in this litigation. Mr. Chestnut was also on the Claimants' Committee which reviewed all the claims. His office acted as liaison between the Clerk and all the class members, and as a result, had reams of correspondence with class members inquirious of the status of the case throughout the litigation. He also served as co-chairman of the Fee Review Committee. The Fee Review Committee has recommended that Chestnut and Brooks receive a multiplier of 2.0. We find a multiplier of 2.0 to be reasonable for the quality of services rendered by Chestnut and Brooks in this litigation. This court has already approved a total lodestar for the Chestnut firm in the amount of $826,605.50 for services rendered from June, 1982 to April, 1987. Multiplying this lodestar by 2.0 results in a subtotal of $1,653,211.00. Adding to this subtotal the additional lodestar of $38,-523.00 for services rendered by the Chestnut firm from April, 1987 to September 23, 1987 results in a total fee award for Chestnut and Brooks in the amount of $1,691,-734.00.[2]

### 7. *Cochrane and Bresnahan*

John A. Cochrane, Esq. made significant contributions to the early stages of this litigation. Mr. Cochrane was co-chairman of the Plaintiffs' Steering Committee and was instrumental in negotiating the Sharing Agreement. He was also a member of the Claimants' Committee and served on the "trial team." The Fee Review Committee has recommended that Cochrane and Bresnahan receive a multiplier of 1.4. We find a multiplier of 1.4 to be reasonable for the quality of services rendered by Cochrane and Bresnahan in this litigation. This court has already approved a total lodestar for the Cochrane firm in the amount of $264,267.24 for services rendered from June, 1982 to April, 1987. Multiplying this lodestar by 1.4 results in a total fee award for Cochrane and Bresnahan in the amount of $369,974.13.

### 8. *Thomas P. Gallagher*

Thomas P. Gallagher, Esq. served on the Plaintiffs' Steering Committee and was responsible for coordinating the security-fraud aspect of this litigation with the bankruptcy aspect. His work was instrumental in obtaining a settlement on behalf of the classes against Norwest Bank, FTC's primary lender. The Fee Review Committee has recommended that Thomas P. Gallagher receive a multiplier of 1.3. We find a multiplier of 1.3 to be reasonable for the quality of services rendered by Thomas P. Gallagher in this litigation. This court has already approved a total lodestar for the Gallagher firm in the amount of $60,900.00 for services rendered from June, 1982 to September, 1985. Multiplying this lodestar by 1.3 results in a

**2.** The Fee Review Committee has recommended that the additional lodestar of $38,523.00 not be included in the multiplier calculation.

total fee award for Thomas P. Gallagher in the amount of $79,170.00.

### 9. *Goodkind, Wechsler, Labaton and Rudoff*

Goodkind, Wechsler, Labaton and Rudoff was principally active in the early settlement with Drexel–Moseley, the lead underwriters of FTC's stock offerings. The Fee Review Committee has recommended that the Goodkind firm receive a multiplier of 1.3. We find a multiplier of 1.3 to be reasonable for the quality of services rendered by the Goodkind firm in this litigation. This court has already approved a total lodestar for the Goodkind firm in the amount of $223,182.00 for services rendered from June, 1982 to September, 1985. Multiplying this lodestar by 1.3 results in a total fee award for Goodkind, Wechsler, Labaton and Rudoff in the amount of $290,136.60.

### 10. *Grossman, Karlins, Siegel and Brill*

Wood Foster, Esq. of the Grossman firm assisted the Receiver involving assets of FTC in the Cayman Islands. The Fee Review Committee has recommended that the Grossman firm receive a multiplier of 1.3. We find a multiplier of 1.3 to be reasonable for the quality of services rendered by the Grossman firm in this litigation. This court has already approved a total lodestar for the Grossman firm in the amount of $52,225.00 for services rendered from June, 1982 to September, 1985. Multiplying this lodestar by 1.3 results in a total fee award for Grossman, Karlins, Siegel and Brill in the amount of $67,892.50.

### 11. *Kohn, Savett, Marion and Graf*

Harold Kohn, Esq. made significant contributions to the early stages of the litigation, particularly in the early settlement with Drexel–Moseley, the lead underwriters of FTC's stock offerings. The Fee Review Committee has recommended that the Kohn firm receive a multiplier of 1.3. We find a multiplier of 1.3 to be reasonable for the quality of services rendered by the Kohn firm in this litigation. This court has already approved a total lodestar for the Kohn firm in the amount of $131,652.00 for services rendered from June, 1982 to September, 1985. Multiplying this lodestar by 1.3 results in a total fee award for Kohn, Savett, Marion and Graf in the amount of $171,147.60.

### 12. *Lapp, Lazar, Laurie and Smith*

The firm of Lapp, Lazar, Laurie and Smith deserves multiplier consideration for its work in the accounting programs, specifically conducting discovery regarding those programs. The Fee Review Committee has recommended that the Lapp firm receive a multiplier of 1.2. We find a multiplier of 1.2 to be reasonable for the quality of services rendered by the Lapp firm in this litigation. This court has already approved a total lodestar for the Lapp firm in the amount of $144,915.00 for services rendered from June, 1982 to September, 1985. Multiplying this lodestar by 1.2 results in a total fee award for Lapp, Lazar, Laurie and Smith in the amount of $173,898.00.

### 13. *Milberg, Weiss, Bershad, Specthrie and Lerach*

David Bershad, Esq. assisted Paul Bernstein, Esq. in conducting the depositions against Fox and Co., FTC's auditor. Mr. Bershad's work was essential in obtaining a final settlement with Fox and Co. valued at some $5,000,000.00. The Fee Review Committee has recommended that the Milberg firm receive a multiplier of 1.5. We find a multiplier of 1.5 to be reasonable for the quality of services rendered by the Milberg firm in this litigation. This court has already approved a total lodestar for the Milberg firm in the amount of $214,260.00 for services rendered from June, 1982 to September, 1985. Multiplying this lodestar by 1.5 results in a total fee award for Milberg, Weiss, Bershad, Specthrie and Lerach in the amount of $321,390.00.

### 14. *Rabin and Silverman*

Rabin and Silverman made significant discovery contributions to this litigation. The Fee Review Committee has recommended that Rabin and Silverman receive a multiplier of 1.2. We find a multiplier of 1.2 to be reasonable for the quality of services rendered by the Rabin firm in this litigation. The court has already approved a total lodestar for the Rabin firm in the amount of $72,353.00 for services rendered from June, 1982 to September, 1985. Multiplying this lodestar by 1.2 results in a total fee award for Rabin and Silverman in the amount of $86,823.60.

### 15. *Sachnoff, Weaver and Rubenstein*

Lowell Sachnoff, Esq. was an active member of the Plaintiffs' Steering Committee. In this capacity, he assisted Jack Chestnut, Esq. in negotiating many of the major settlements in this litigation. Mr. Sachnoff also was actively involved in the appellate phase of this litigation. It was Mr. Sachnoff who personally argued successfully five of the appeals in the United States Court of Appeals for the Eighth Circuit. The Fee Review Committee has recommended that the Sachnoff firm receive a multiplier of 1.7. We find a multiplier of 1.7 to be reasonable for the quality of services rendered by the Sachnoff firm in this litigation. The court has already approved a total lodestar for the Sachnoff firm in the amount of $590,335.00 for services rendered from June, 1982 to April, 1987. Multiplying this lodestar by 1.7 results in a total fee award for Sachnoff, Weaver, and Rubenstein in the amount of $1,003,569.50.

### 16. *Wolf, Haldenstein, Adler, Freeman and Herz*

Dan Krasner, Esq. was also an active member of the Plaintiffs' Steering Committee. He also formed the other half of the "appellate team" along with Lowell Sachnoff, Esq. Mr. Krasner's firm took on the principal responsibilities for briefing the many appeals in the Eighth Circuit as well as briefing the many motions and required memorandums filed with this court. Mr. Krasner also assisted in conducting discovery against Drexel–Moseley, the lead underwriters of FTC's stock offerings. The Fee Review Committee has recommended that the Wolf firm receive a multiplier of 1.6. We find a multiplier of 1.6 to be reasonable for the quality of services rendered by the Wolf firm in this litigation. The court has already approved a total lodestar for the Wolf firm in the amount of $571,029.50 for services rendered from June, 1982 to April, 1987. Multiplying this lodestar by 1.6 results in a subtotal of $913,647.20. Adding to this subtotal the additional lodestar of $1,661.00 for services rendered by the Wolf firm from April, 1987 to September 23, 1987 results in a total fee award for Wolf, Haldenstein, Adler, Freeman and Herz in the amount of $915,-308.20.[3]

The total amount of attorneys' fees awarded in this litigation amounts to $7,812,079.60. The total amount of expenses awarded in this litigation amounts to $477,726.90.[4] Significantly, the sum of these two figures, $8,289,806.50, is some $1.8 million less than the $10 million that was originally forecasted in the notice to the members of the classes as representing total attorneys' fees and expenses for Subclasses I, II, III and V in this litigation. Moreover, the $8,289,806.50 figure constitutes approximately 15.9% of "Total Recoveries" and interest thereon, whereas the $10 million forecasted in the notice constituted approximately 20% of "Total Recoveries" in this litigation. We, therefore, find the final award of fees and expenses to be fair, reasonable and just.

An appropriate Order follows.

---

3. The Fee Review Committee has recommended that the additional lodestar of $1,661.00 not be included in the multiplier calculation.

4. A copy of the Order awarding expenses is attached as Exhibit C.

## ORDER

The fee petitions and the supplemental fee petitions of counsel for the plaintiff classes are GRANTED in the following amounts:

| COLUMN A<br><br>NAME OF FIRM | COLUMN B<br>COURT AP-PROVED LODESTAR FROM 6/82 TO 9/85 | COLUMN C<br>COURT AP-PROVED LODESTAR FROM 9/85 TO 4/87 | COLUMN D<br><br>MULTIPLIER | COLUMN E<br><br>SUBTOTAL | COLUMN F<br>COURT AP-PROVED LODESTAR FROM 4/87 TO 9/22/87 (NO MULTI-PLIER) | COLUMN G<br><br>TOTAL FEE AWARD |
|---|---|---|---|---|---|---|
| ABBEY & ELLIS | 187,742.00 | | 1.2 | 225,290.40 | | $ 225,290.40 |
| ABRAHSON & FOX | 36,000.00 | | | 36,000.00 | | 36,000.00 |
| BARRACK RODOS & BA-CINE | 509,729.00 | 35,998.75 | 1.85 | 1,009,596.33 | 6,125.00 | 1,015,721.33 |
| DONALD BARRY | 296,196.00 | | 1.5 | 444,294.00 | | 444,294.00 |
| BERGER & MONTAGUE | 182,109.00 | | 1.2 | 218,530.80 | | 218,530.80 |
| BERNSTEIN, LITOWITZ BERGER AND GROSS-MAN | 269,458.00 | | 1.5 | 404,187.00 | | 404,187.00 |
| THOMAS BRILL | 22,792.00 | | | 22,792.00 | | 22,792.00 |
| CHESTNUT & BROOKS | 674,475.00 | 152,130.50 | 2.0 | 1,653,211.00 | 38,523.00 | 1,691,734.00 |
| COCHRANE & BRESNA-HAN | 253,106.00 | 11,161.24 | 1.4 | 369,974.13 | | 369,974.13 |
| FISHMAN, MERRICK & PERLMAN | 57,142.00 | | | 57,142.00 | | 57,142.00 |
| FROMMELT & EIDE | 7,400.00 | | | 7,400.00 | | 7,400.00 |
| GAINSLEY, SQUIRE THOR-SEN & McTAGGERT | 1,500.00 | | | 1,500.00 | | 1,500.00 |
| THOMAS GALLAGHER | 60,900.00 | | 1.3 | 79,170.00 | | 79,170.00 |
| EDWARD GLICKMAN | 27,000.00 | | | 27,000.00 | | 27,000.00 |
| GOODKIND, WECHSLER, LABATON & RUDOFF | 223,182.00 | | 1.3 | 290,136.60 | | 290,136.60 |
| GREENFIELD & CHIMI-CLES | 36,310.00 | | | 36,310.00 | | 36,310.00 |
| GROSS & SKLAR | 69,227.95 | | | 69,227.95 | | 69,227.95 |
| GROSSMAN, KARLINS, SIE-GEL & BRILL | 52,225.00 | | 1.3 | 67,892.50 | | 67,892.50 |
| KOHN, SAVETT, MARION & GRAF | 131,652.00 | | 1.3 | 171,147.60 | | 171,147.60 |
| LAPP, LAZAR, LAURIE & SMITH | 144,915.00 | | 1.2 | 173,898.00 | | 173,898.00 |
| MAUN, GREEN, HAYES, SI-MON, JOHANNESON & BREHL | 19,000.00 | | | 19,000.00 | | 19,000.00 |
| MESSINGER, COOPER & NORTON | 1,000.00 | | | 1,000.00 | | 1,000.00 |
| MILBERG, WEISS, BER-SHAD, SPECTHRIE & LERACH | 214,260.00 | | 1.5 | 321,390.00 | | 321,390.00 |
| RABIN & SILVERMAN | 72,353.00 | | 1.2 | 86,823.60 | | 86,823.60 |
| SACHNOFF, WEAVER & RUBENSTEIN | 532,585.00 | 57,750.00 | 1.7 | 1,003,569.50 | | 1,003,569.50 |
| SCHOENGOLD & SPORN | 14,576.00 | | | 14,576.00 | | 14,576.00 |
| STULL, STULL & BRODY | 19,288.00 | | | 19,288.00 | | 19,288.00 |
| WOLF, HALDENSTEIN, ADLER FREEMAN & HERZ | 500,646.00 | 70,383.50 | 1.6 | 913,647.20 | 1,661.00 | 915,308.20 |
| ZIMMERMAN, CAPLAN & REED | 21,776.00 | | | 21,776.00 | | 21,776.00 |
| TOTALS: | 4,638,544.95 | 327,423.99 | | 7,765,770.60 | 46,309.00 | $7,812,079.60 |

The Receiver shall pay to the law firms listed above the amount designated in Column G.

The Receiver shall submit an order for distribution to the plaintiff class of the sums remaining in the settlement fund after payment of attorneys' fees and costs as provided herein; said distribution to the class will be made in sixty (60) days.

IT IS SO ORDERED.

EXHIBIT A

730 F.2d 1128.

In re FLIGHT TRANSPORTATION
CORPORATION SECURITIES
LITIGATION.

Nos. 83–2021, 83–2114, 83–2115
and 83–2121.

United States Court of Appeals,

Eighth Circuit.

Submitted Oct. 11, 1983.

Decided March 26, 1984.

Rehearing and Rehearing En Banc

Denied May 25, 1984.

Before LAY, Chief Judge, HENLEY,
Senior Circuit Judge, and ARNOLD, Circuit Judge.

ARNOLD, Circuit Judge.

This appeal presents the question whether the District Court abused its discretion in approving a "settlement" among claimants in a massive securities-fraud case that has been further complicated by a bankruptcy. We affirm in the main, vacate with respect to one aspect of the settlement, and remand for further proceedings.

I.

A.

Flight Transportation Corporation (FTC), a Minnesota corporation, and its subsidiary corporations provided air-charter and other general-aviation services. William Rubin was FTC's President, Chairman of the Board, and chief executive officer.

In June 1982 FTC made two public offerings of securities. On June 3, 1982, FTC sold 715,000 shares of common stock and, on June 4, 1982, 25,000 "units" of securi-

ties, each unit consisting of a debenture and a number of stock warrants. Drexel Burnham Lambert Incorporated and Moseley, Hallgarten, Estabrook & Weeden (Drexel–Moseley) were the lead underwriters, and, on June 10 and June 14, 1982, they delivered certified checks totalling over $24 million to FTC in full payment for the two offerings.[1] FTC deposited these checks in its account at a New Jersey bank.

A few days later, on June 18, 1982, the SEC halted trading in FTC securities and commenced an action against FTC, its subsidiaries, and Rubin in the United States District Court for the District of Minnesota, alleging that the defendants had violated several provisions, especially the anti-fraud provisions, of the federal securities laws.[2] The SEC sought an injunction against further violations, appointment of a receiver, an accounting, and an order of disgorgement so that, apparently, restitution might be made to defrauded investors. See *SEC v. Flight Transportation Corp.*, 699 F.2d 943, 945 & n. 2 (8th Cir.1983). The District Court entered a temporary restraining order and appointed a receiver, who caused some $22.7 million, the remaining proceeds of the June 3 and 4, 1982, offerings, to be transferred from FTC's account in the New Jersey bank to a segregated, interest-bearing account in a Minneapolis bank (the Escrow Fund).[3]

Then, on June 23, 1982, Drexel–Moseley filed a class action in the same district court on behalf of themselves and all other persons who had purchased FTC securities pursuant to the June 3 and June 4 offerings.[4] In August 1982 Drexel–Moseley moved for a constructive trust on the Escrow Fund on behalf of members of the public to whom they had sold the June 1982 securities and sought a preliminary injunc-

---

1. Drexel–Moseley paid FTC $6,309,875 for the 715,000 shares of common stock and $18,001,562.50 for the 25,000 "units."

2. For example, the SEC alleged that on registration statements, prospectuses, and other documents the defendants had overstated gross revenues, miles flown, and number of helicopter and charter flights; that Rubin and others had engaged in a check-kiting scheme; and that Rubin had misapplied FTC funds.

3. The fund now exceeds $25 million, including accrued interest.

4. Drexel–Moseley and other members of the underwriting syndicate bought all of the securities in the June 1982 offerings pursuant to their agreement with FTC, Joint Appendix (Jt.App.) 55–58, and then resold most of them to the investing public. Drexel–Moseley still own about $300,000 worth of the June 1982 securities.

tion against the distribution, commingling, withdrawal, or other disposition of the Escrow Fund. The District Court has never explicitly ruled on this motion.

During the following months, the litigation became increasingly complex. A number of separate individual and class actions were filed against FTC, its subsidiaries, its officers and directors, its accountants, and its underwriters. Certain defendants cross-claimed for indemnity, and some of FTC's directors brought suits for damages directly against FTC. On October 8, 1982, about 22 cases were consolidated when a class-action complaint was filed on behalf of all persons who purchased FTC securities between November 30, 1979, and June 18, 1982. *Antinore v. Flight Transportation Corp.*, Master Docket No. 4–082–874 (D.Minn.1982), Jt.App. 693. Moreover, on June 29, 1982, several major creditors filed an involuntary Chapter 11 bankruptcy petition against FTC in the Bankruptcy Court for the District of Minnesota. When the District Court stayed the bankruptcy as well as all other proceedings against the defendants, several appeals to this Court ensued. We directed that the bankruptcy action be allowed to proceed, *SEC v. Flight Transportation Corp.*, 693 F.2d 66 (8th Cir.1982) (per curiam); *SEC v. Flight Transportation Corp.*, Nos. 82–1964,–1990 (8th Cir. Mar. 8, 1983) (order dismissing appeals), and that one of FTC's creditors and William Rubin's wife be allowed to intervene in the SEC action in the District Court, *SEC v. Flight Transportation Corp.*, 699 F.2d 943 (8th Cir.1983). We left open the other major issue on appeal, that of whether the District Court or the Bankruptcy Court should decide the constructive-trust and disgorgement claims, noting that t issue could be addressed in the lower courts and thereafter reviewed on appeal if necessary. *SEC v. Flight Transportation Corp.*, Nos. 82–1964, –1990 (8th Cir. Mar. 8, 1983) (order dismissing appeals).

Meanwhile, representatives of persons who had purchased FTC securities and certain business creditors of FTC began nego-tiating in order to resolve their competing claims to the Escrow Fund. On April 15, 1983, they entered into the "Sharing Agreement" which is the subject of this appeal.

On May 18, 1983, the Bankruptcy Court directed that FTC be declared a bankrupt. Subsequently, Judge Charles R. Weiner,[5] who had previously been designated by the Judicial Panel on Multidistrict Litigation to sit as the District Judge in this litigation, was also designated to sit as the Bankruptcy Judge. On May 27, 1983, Drexel–Moseley moved the District Court for summary judgment on its constructive-trust claim and for certification of a constructive-trust-beneficiary class.

On June 27, 1983, Judge Weiner held a hearing to consider the Sharing Agreement. Various parties argued the merits of the Sharing Agreement and the constructive-trust claim, among other matters. About three weeks later, Judge Weiner entered the three orders from which these appeals are taken. The first order, Pretrial Order No. 153, certifies as a class all persons who purchased FTC securities between 1979 and 1982, and suffered a loss from such purchase, with the exception of officers and directors of FTC and related companies, other defendants named in the FTC or related actions, and any other person found guilty of wrongdoing in the FTC action or related actions. The class is divided into five subclasses: (1) purchasers of FTC common stock pursuant to a registration statement dated November 30, 1979; (2) purchasers of units of securities of FTC including common stock and warrants, issued pursuant to a registration statement dated March 2, 1981; (3) purchasers of FTC common stock pursuant to a registration statement dated June 3, 1982; (4) purchasers of FTC units consisting of debentures and stock warrants, pursuant to a registration statement dated June 4, 1982; and (5) all class members not included in any of the four preceding subclasses.

5. United States District Judge for the Eastern District of Pennsylvania, sitting by designation in the District of Minnesota.

The second order entered by the District Court, Pretrial Order No. 154, approved the Sharing Agreement. The court found that the Sharing Agreement was fair, adequate, and reasonable, and directed the parties to place it into effect. The third order was entered by Judge Weiner in his capacity as bankruptcy judge, and it authorizes Thomas C. Bartsh, previously appointed as receiver of FTC by the District Court, and later also appointed by the Bankruptcy Court as debtor-in-possession of FTC's bankrupt estate, to become a party to the Sharing Agreement, to bind the estate to the Agreement, and to transfer or assign claims of the estate as necessary to comply with the Sharing Agreement.

Drexel–Moseley (the underwriters) appeal all three orders. The remaining appellants—Fox & Company (FTC's auditor), Reavis & McGrath (the underwriters' lawyers), and a group of "outside" directors of FTC (the Adams Group)—appeal the latter two orders.

B.

Under the Sharing Agreement, persons, including the receiver and the bankruptcy estate, who have claims against FTC or other defendants agree to prosecute their claims jointly, to pool their recoveries, whether from the Escrow Fund, other assets of FTC, or damage actions against any of the defendants, and to disburse the money among themselves in accordance with an agreed-upon schedule. Defendants, defined as "[a]ny PERSON against whom any CLAIMANT has any claim for a monetary recovery arising out of or related to the CLAIMANT's claim against FTC," Jt. App. 360, are excluded from the Sharing Agreement.

The Agreement provides that, first, the pooled recoveries will be divided between creditors and securities claimants. The securities claimants, also known as the "class plaintiffs," are divided into subclasses in accordance with Pretrial Order No. 153. The pooled recoveries are allocated accord-

ing to the following schedule, set out in paragraph "O" of the Sharing Agreement:

(1) The initial $25,000,000 of TOTAL RECOVERIES shall be allocated as follows:

| | |
|---|---:|
| CREDITORS | $11,000,000 |
| SUBCLASS I and II | 500,000 |
| SUBCLASS III | 1,250,000 |
| SUBCLASS IV | 11,000,000 |
| SUBCLASS V | 500,000 |
| EXPENSE FUND | 750,000 |

(2) The next $5,000,000 of TOTAL RECOVERIES shall be allocated as follows:

| | |
|---|---:|
| CREDITORS | $1,500,000 |
| SUBCLASS I and II | 500,000 |
| SUBCLASS III | 1,000,000 |
| SUBCLASS IV | 1,500,000 |
| SUBCLASS V | 500,000 |

(3) The next $5,000,000 of TOTAL RECOVERIES shall be allocated as follows:

| | |
|---|---:|
| CREDITORS | $1,800,000 |
| SUBCLASS I and II | –0– |
| SUBCLASS III | 500,000 |
| SUBCLASS IV | 2,700,000 |
| SUBCLASS V | –0– |

Jt.App. 379. The class plaintiffs agree not to assert any claim against funds allocated to creditors. Jt.App. 370.

Next, the source of each recovery in the creditors' allocation is identified, and the creditors' allocation is suballocated into two funds. Fund A, which becomes the bankruptcy estate, consists of all recoveries from the creditors' part of the "ESCROW FUND or Assets of FTC (except to the extent that an Asset of FTC consists of a claim against present or former officers, directors, accountants or attorneys of FTC, or underwriters of FTC securities ...)...." plus five per cent. of all other recoveries. Fund B consists of the remaining recoveries, i.e., 95 per cent. of the recoveries from sources other than the Escrow Fund or FTC's assets. Thus, Fund B

is comprised of the creditors', class plaintiffs', and FTC's recoveries from defendants other than FTC: the officers and directors, underwriters, accountants, lawyers, and so forth. These defendants cannot participate in Fund B (which is available only to "Participating Creditors," defined so as to exclude these defendants), although they are free to make claims against the bankruptcy estate (which consists of Fund A). The operation of the Sharing Agreement may be illustrated by a simplified diagram, which does not purport to be proportionately accurate:

**1106**

EXHIBIT B

United States District Court
District of Minnesota
Fourth Division

In re Flight Transportation Corporation
Securities Litigation

Master Docket No. 4–82–874

MDL No. 517

ORDER

AND NOW, this 15th day of May, 1987, upon the Petition of Thomas C. Bartsh, Receiver of Flight Transportation Corporation, and after notice to all interested counsel, and no objections having been received, IT IS HEREBY ORDERED and DECREED as follows:

The Receiver shall pay to each law firm listed on Exhibit A, an amount equal the sum set forth on Column B of said Exhibit.

(s) Charles R. Weiner
Charles R. Weiner, U.S.D.J.

EXHIBIT A

| Name of Firm | COLUMN A Lodestar Recommended | COLUMN B 40% Of Lodestar Recommended |
|---|---|---|
| 1. ABBEY & ELLIS | $ 187,742.00 | $ 75,096.80 |
| 2. ABRAMSON & FOX | $ 36,000.00 | $ 14,400.00 |
| 3. BARRACK, RODOS & BACINE | $ 509,729.00 | $ 203,891.60 |
| 4. DONALD D. BARRY | $ 296,196.00 | $ 118,478.40 |
| 5. BERGER & MONTAGUE | $ 182,109.00 | $ 72,843.60 |
| 6. BERNSTEIN, LITOWITZ, BERGER & GROSSMAN | $ 269,458.00 | $ 107,783.20 |
| 7. THOMAS A. BRILL | $ 22,792.00 | $ 9,116.80 |
| 8. CHESTNUT & BROCKS | $ 674,475.00 | $ 269,790.00 |
| 9. COCHRANE & BRESNAHAN | $ 253,106.00 | $ 101,242.40 |
| 10. FISHMAN, MERRICK & PERLMAN | $ 57,142.00 | $ 22,856.80 |
| 11. FROMMELT & EIDE | $ 7,400.00 | $ 2,960.00 |
| 12. GAINSLEY, SQUIRE, THORSEN & MCTAGGERT | $ 1,500.00 | $ 600.00 |
| 13. THOMAS P. GALLAGHER | $ 60,900.00 | $ 24,360.00 |
| 14. EDWARD W. GLICKMAN | $ 27,000.00 | $ 10,800.00 |
| 15. GOODKIND, WECHSLER, LABATON & RUDOFF | $ 223,182.00 | $ 89,272.80 |
| 16. GREENFIELD & CHIMICLES | $ 36,310.00 | $ 14,524.00 |
| 17. GROSSMAN, KARLINS SIEGEL & BRILL | $ 52,225.00 | $ 20,890.00 |
| 18. KOHN, SAVETT, MARION & GRAF | $ 131,652.00 | $ 52,660.80 |
| 19. LAPP, LAZAR, LAURIE & SMITH | $ 144,915.00 | $ 57,966.00 |
| 20. MAUN, GREEN, HAYES, SIMON, JOHANNESON & BREHL | $ 19,000.00 | $ 7,600.00 |
| 21. MESSINGER, COOPER & NORTON | $ 1,000.00 | $ 400.00 |
| 22. MILBERG, WEISS, BERSHAD, SPECTHRIE LERACH | $ 214,260.00 | $ 85,704.00 |
| 23. RABIN & SILVERMAN | $ 72,353.00 | $ 28,941.20 |
| 24. SACHNOFF, WEAVER & RUBENSTEIN | $ 532,585.00 | $ 213,034.00 |
| 25. SCHOENGOLD & SPORN | $ 14,576.00 | $ 5,830.40 |
| 26. STULL, STULL & BRODY | $ 19,288.00 | $ 7,715.20 |
| 27. WOLF, HALDENSTEIN, ADLER, FREEMAN & HERZ | $ 500,646.00 | $ 200,258.40 |
| 28. ZIMMERMAN, CAPLAN & REED | $ 21,776.00 | $ 8,710.40 |
| TOTAL: | $4,569,317.00 | $1,827,726.80 |

EXHIBIT C

United States District Court
District of Minnesota
Fourth Division
In re Flight Transportation Corporation
Securities Litigation
Master Docket No. 4–82–874
M.D.L. No. 517

**PRETRIAL ORDER NO. _____**

Based upon the Petition of the Receiver, and no objections having been received,
IT IS HEREBY ORDERED:

1. That the Receiver is authorized to pay the out-of-pocket expenses in the amounts, and to counsel listed on Exhibit A attached hereto.

2. Said expenses shall be paid out of the Attorneys' Expense Fund established to the Sharing Agreement.

IT IS SO ORDERED.

Dated: 3/23, 1987

BY THE COURT
(s) Charles R. Weiner
U.S. District Court Judge

EXHIBIT A

| | Petitioning Firm | Recommended | Disbursements |
|---|---|---|---|
| (1) | ABBEY & ELLIS | Disbursement: | $ 14,575.85 |
| (2) | ABRAMSON & FOX | Disbursement: | $ 6,150.92 |
| (3) | BARRACK, RODOS & BACINE | Disbursement: | $ 72,339.11 |
| (4) | DONALD D. BARRY | Disbursement: | $ 20,126.66 |
| (5) | BERGER & MONTAGUE | Disbursement: | $ 24,751.05 |
| (6) | BERNSTEIN, LITOWITZ, BERGER & GROSSMAN | Disbursement: | $ 25,085.81 |
| (7) | THOMAS A. BRILL | Disbursement: | $ 1,988.92 |
| (8) | CHESTNUT & BROOKS | Disbursement: | $ 40,703.09 |
| (9) | COCHRANE & BRESNAHAN | Disbursement: | $ 19,529.10 |
| (10) | FISHMAN, MERRICK & PERLMAN | Disbursement: | $ 4,363.05 |
| (11) | FROMMELT & EIDE | Disbursement: | $ 2,767.00 |
| (12) | GAINSLEY, SQUIRE, THORSEN & MCTAGGERT | Disbursement: | $ 1,163.67 |
| (13) | THOMAS P. GALLAGHER | Disbursement: | $ 11,512.61 |
| (14) | EDWARD W. GLICKMAN | Disbursement: | $ 2,919.60 |
| (15) | GOODKIND, WECHSLER, LABATON & RUDOFF | Disbursement: | $ 15,215.43 |
| (16) | GREENFIELD & CHIMICLES | Disbursement: | $ 5,676.10 |
| (17) | GROSSMAN, KARLINS SIEGEL & BRILL | Disbursement: | $ 5,954.87 |
| (18) | GROSS & SKLAR | Disbursement: | $ 9,052.09 |
| (19) | KOHN, SAVETT, MARION & GRAF | Disbursement: | $ 14,217.97 |
| (20) | LAPP, LAZAR, LAURIE & SMITH | Disbursement: | $ 11,373.93 |
| (21) | MAUN, GREEN, HAYES, SIMON, JO-HANNESON & BREHL | Disbursement: | $ 3,692.41 |
| (22) | MESSINGER, COOPER & NORTON | Disbursement: | $ 1,177.75 |
| (23) | MILBERG, WEISS, BERSHAD, SPEC-THRIE & LERACH | Disbursement: | $ 30,774.44 |
| (24) | RABIN & SILVERMAN | Disbursement: | $ 6,387.15 |
| (25) | SACHNOFF, WEAVER & RUBEN-STEIN | Disbursement: | $ 66,739.18 |
| (26) | SCHOENGOLD & SPORN | Disbursement: | $ 2,421.30 |
| (27) | STULL, STULL & BRODY | Disbursement: | $ 3,168.85 |
| (28) | STUURMANS & KELLY | Disbursement: | $ 849.05 |
| (29) | WOLF, HALDENSTEIN, ADLER, FREEMAN & HERZ | Disbursement: | $ 49,762.57 |
| (30) | ZIMMERMAN, CAPLAN & REED | Disbursement: | $ 3,287.37 |
| | Total Disbursements: | | $477,726.90 |