Michael W. KUHNEN, Cynthia J. Kuhnen, James J. Schmitz, and Joanne E. Schmitz, on behalf of themselves and all former residents of the State of Wisconsin in 1980, similarly situated, Plaintiffs-Appellants,

v.

Mark E. MUSOLF, individually and as Secretary of the State of Wisconsin Department of Revenue, and all his unknown agents, employees, successors in office, assistants and all others acting in concert or cooperation with him or at his direction or under his control, Defendants-Respondents.†

Court of Appeals

*No. 86–0372. Submitted on briefs May 6, 1987.—Decided January 14, 1988.*

(Also reported in 420 N.W.2d 401.)

† Petition to review denied. Petition for cross-review denied.

For the plaintiffs-appellants the cause was submitted on the briefs of *Eugene O. Duffy* and *Russell C. Brannen, Jr.,* of *O'Neil, Cannon & Hollman, S.C.,* of Milwaukee.

For the defendants-respondents the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *John J. Glinski,* assistant attorney general.

Before Dykman, Eich and Sundby, JJ.

SUNDBY, J.  Michael Kuhnen, Cynthia Kuhnen, James Schmitz, and Joanne Schmitz on behalf of themselves and all former residents of the state in 1980, similarly situated, appeal from a judgment declaring constitutional secs. 71.05(1)(a)5 and 7, 71.09(6p)(d)1 and 71.53(6), Stats. (1979–80).[1] Section 71.05(1)(a)5 includes in adjusted gross income subject to Wisconsin income tax gain on the sale or exchange of a principal residence excluded under sec. 1034(a) of the Internal Revenue Code (26 U.S.C. sec. 1034(a) (1976)), if the new residence is located outside the state.[2] Section 71.05(1)(a)7 provides that employment-

---

[1]The action is brought against the secretary of the department of revenue. Recognizing his representative capacity, we will refer to the defendant-respondent as the department. Unless otherwise noted all references to ch. 71, Stats., will be to the 1979–80 statutes.

[2]For Wisconsin income tax purposes, state adjusted gross income is defined as federal adjusted gross income "with modifications." Sec. 71.02(2)(e), Stats. Section 71.05(1)(a)5, provides for modification relating to sale or exchange of a principal residence as follows:

related moving expanses incurred to move from Wisconsin, deductible for federal income tax purposes, are not deductible for state income tax purposes.[3] Section 71.09(6p)(d)1 limits personal exemptions to that fraction of the year the taxpayer is domiciled within the state.[4] Section 71.53(6) requires that deductions for property taxes and rent be reduced by one-twelfth for any full month in which the taxpayer is not domiciled in Wisconsin.[5]

Some of the modifications referred to in s. 71.02(2)(c),(e) and (m) are:

    (a)   Add:

    . . . .

    5.   Gain on the sale or exchange of a principal residence, excluded under section 1034(a) of the internal revenue code, if the "new residence" referred to therein is located outside this state.

[3]Section 71.05(1)(a)7, Stats., provides:

Some of the modifications referred to in s. 71.02(2)(c),(e) and (m) are:

    (a)   Add:

    . . . .

    7.   Moving expenses incurred to move from this state.

[4]Section 71.09(6p)(d)1, Stats., provides:

    (d)   Beginning with the calendar year 1975 and corresponding fiscal years and thereafter, the deduction for personal exemptions provided for in this subsection shall be limited as follows:

    1.   With respect to persons who change their domicile into or from the state during the taxable year, personal exemptions shall be limited to such fraction of the amount so determined that the time of domicile within this state is of the total time during the taxable year, but the total deduction for all personal exemptions shall not be less than $5.

[5]Section 71.53(6), Stats., provides:

Property taxes and rent constituting property taxes shall be reduced by one-twelfth for any full month in which the claimant was not domiciled in this state. . . .

The taxpayers claim that these statutes violate the privileges and immunities clause and the commerce clause of the federal constitution, violate their right to travel and deny them the equal protection of the laws under the federal and the Wisconsin constitutions. Because we conclude there is no substantial reason for the different treatment of nonresidents in the taxation of gain realized on the sale of their principal residences and the treatment has no substantial relation to a legitimate state objective, we reverse and direct that the trial court enter judgment declaring that sec. 71.05(1)(a)5, Stats., violates the privileges and immunities clause. In all other respects we affirm the judgment.

## I.

## BACKGROUND OF THE CASE

The relevant facts are not disputed. The taxpayers are two couples who, in each case, in 1980 sold their principal residence in Wisconsin and, in employment-related moves, moved to another state where they acquired a new principal residence. In each case the department seeks to impose on them additional income taxes under the challenged statutes. Had either couple relocated in the state in an employment-related move, no additional tax would have been due.

For federal income tax purposes, each of the taxpayers qualified for nonrecognition of gain on the sale of his or her principal residence under sec. 1034(a) of the Internal Revenue Code (26 U.S.C. sec. 1034(a) (1976)).[6] Under sec. 1034(a), the recognition of gain

---

[6] 26 U.S.C. sec. 1034(a) (1976), hereafter referred to as sec. 1034(a), IRC, provides as follows:

realized upon the sale of the taxpayer's principal residence is deferred from taxation indefinitely until either a disqualifying sale is made, the gain is totally avoided by virtue of the step-up in basis at death, or permanently excluded under sec. 121 of the code (26 U.S.C. sec. 121 (Supp. 1980)).[7] For tax years prior to 1982,[8] sec. 71.50(1)(a)5, Stats., requires that the gain on the sale or exchange of a principal residence, excluded under sec. 1034(a), IRC, be added to federal adjusted gross income in determining Wisconsin adjusted gross income if the new residence is located outside Wisconsin.

If property (in this section called "old residence") used by the taxpayer as his principal residence is sold by him and, within a period beginning 18 months before the date of such sale and ending 18 months after such date, property (in this section called "new residence") is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales price (as defined in subsection (b)) of the old residence exceeds the taxpayer's cost of purchasing the new residence.

[7] 26 U.S.C. sec. 121 (Supp. 1980), hereafter referred to as sec. 121, IRC, provides:

At the election of the taxpayer, gross income does not include gain from the sale or exchange of property if—
   (1)   the taxpayer has attained the age of 55 before the date of such sale or exchange, and
   (2)   during the 5-year period ending on the date of the sale or exchange, such property has been owned and used by the taxpayer as his principal residence for periods aggregating 3 years or more.

[8] Section 71.05(1)(a)5, Stats., was amended to be applicable only for taxable years prior to 1982. Section 1090fb, ch. 20, Laws of 1981. Section 71.05(1)(a)5 was repealed by sec. 1283, 1985 Wis. Act 29. Sections 71.05(1)(a)7, 71.09(6p)(d)1 and 71.53(6) have not been altered in substance.

Each of the taxpayers deducted moving expenses under 26 U.S.C. sec. 217(a) (1976)[9] for federal income tax purposes. Because of sec. 71.05(1)(a)7, Stats., they could not deduct these expenses for Wisconsin income tax purposes. In contrast, moving expenses incurred to move within or into the state in connection with new employment are deductible for Wisconsin as well as federal income tax purposes.

Under Wisconsin law, had each of the taxpayers been a resident of the state for the entire taxable year, there would have been available a $20 exemption for him or her, his or her spouse and each dependent. Sec. 71.09(6p), Stats. Also, under Wisconsin law, had each of the taxpayers remained a Wisconsin resident for the entire taxable year, he or she would have been granted a credit against Wisconsin income tax due equal to twelve percent of such taxpayer's property taxes as defined in sec. 71.53.

We first consider whether any of these statutes violate art. IV, sec. 2, cl. 1, of the federal constitution, the privileges and immunities clause.

## II.

## THE PRIVILEGES AND IMMUNITIES CLAUSE

Article IV, sec. 2, cl. 1 of the United States Constitution provides: "The citizens of each state shall be entitled to all privileges and immunities of citizens

---

[9]26 U.S.C. sec. 217(a) (1976), hereafter referred to as sec. 217(a), IRC, provides.

> There shall be allowed as a deduction moving expenses paid or incurred during the taxable year in connection with the commencement of work by the taxpayer as an employee or as a self-employed individual, at a new principal place of work.

.

in the several states." The analytical framework for review of challenges to laws under the privileges and immunities clause was set forth by the Wisconsin Supreme Court in *Taylor v. Conta,* 106 Wis. 2d 321, 331–36, 316 N.W.2d 814, 820–22 (1982). We shall summarize the framework as described by the court but refer the reader to that case for a more comprehensive explication.

While the privileges and immunities clause speaks in terms of absolute equality among all citizens, it has been recognized that a state need not grant nonresidents precisely the same rights it grants residents. *Taylor,* 106 Wis. 2d at 329, 316 N.W.2d at 819. Cases under the clause raise issues of discrimination as well as issues of federalism. Wisconsin as an incident of its sovereignty has the power to raise revenue by taxation, but it must stay within the limits set by the federal constitution for the protection of individuals and national unity. *Id.* at 330, 316 N.W.2d at 819.

What emerges from the United States Supreme Court cases interpreting the clause is a three-step inquiry when a state taxing statute is challenged under the clause. *Taylor,* 106 Wis. 2d at 330, 316 N.W.2d at 819. First, the court must analyze the distribution of the tax burden between citizens and noncitizens to determine whether the law disadvantages noncitizens. *Id.* at 331, 316 N.W.2d at 820. The *Taylor* court assumed, for purposes of analysis, that the disadvantage to the taxpayers resulting from sec. 71.05(1)(a)5, Stats. (1975), was not so insignificant that it could be ignored. *Id.* at 334, 316 N.W.2d at 821. The

department makes a similar assumption for purposes of its argument and we accept the assumption.

The second step in the three-step analysis is "a determination of whether the discrimination violates a fundamental right." *Taylor,* 106 Wis. 2d at 335, 316 N.W.2d at 822. In *Taylor* the court held that the right to equal treatment in taxation is one of the protected fundamental rights. *Id.* at 335–36, 316 N.W.2d at 822.

We move, therefore, to the last step in the analysis, which "is to determine whether the state's discriminatory treatment of non-citizens is within or outside the bounds set by the constitution." *Taylor,* 106 Wis. 2d at 336, 316 N.W.2d at 822. Since the third step in the analysis is critical to our determination, we set forth at some length the "substantial reason for the discrimination" test stated in *Toomer v. Witsell,* 334 U.S. 385, 396 (1948), quoted in *Taylor* as follows:

> Like many other constitutional provisions, the privileges and immunities clause is not an absolute. It does bar discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States. But it does not preclude disparity of treatment in the many situations where there are perfectly valid independent reasons for it. Thus the inquiry in each case must be concerned with whether such reasons do exist and whether the degree of discrimination bears a close relation to them. The inquiry must also, of course, be conducted with due regard for the principle that the States should have considerable leeway in analyzing local evils and in prescribing appropriate cures.

*Taylor,* 106 Wis. 2d at 337, 316 N.W.2d at 822–23.

■ The *Taylor* court said that the *Toomer* test for constitutionality is "whether the means employed bear a substantial relation to legitimate state objectives." *Taylor,* 106 Wis. 2d at 341, 316 N.W.2d at 824. The states may have more leeway in the field of taxation than in other regulatory measures. *Id.,* 316 N.W.2d at 825.

■ *Taylor,* 106 Wis. 2d at 347, 316 N.W.2d at 827, held that sec. 71.05(1)(a)5, Stats. (1975),[10] bore a substantial relation to the legitimate state objective of raising revenue by a tax system which equitably allocates the tax burden. We, of course, are bound by supreme court precedent. *Nordeen v. Hammerlund,* 132 Wis. 2d 164, 170, 289 N.W.2d 828, 830 (Ct. App. 1986).

■ The taxpayers make arguments which are inconsistent with *Taylor.* For example, they argue that we must give the statutes "strict scrutiny" or "close scrutiny." The Wisconsin Supreme Court held, however, that the "substantial relation" test falls between the minimum scrutiny and the strict scrutiny tests. *Taylor,* 106 Wis. 2d at 339–40, 316 N.W.2d at 823–24. The *Taylor* court rejected the "strict scrutiny" test and we find no authority for the taxpayers' suggested "close scrutiny" test.[11]

---

[10]The 1979–80 statute is identical to the 1975 statute.

[11]We recognize, however, that when the privileges and immunities clause is properly invoked to shield an activity, a heightened standard of review is required. In *Austin v. New Hampshire,* 420 U.S. 656, 662 (1975), relied on by the taxpayers, the Court said that when a tax measure is challenged as an undue burden on an activity granted special constitutional recognition,

We also reject the taxpayers' argument that *Taylor* is dicta and of no precedential value. "It is deemed the doctrine of the cases is that when a court of last resort intentionally takes up, discusses, and decides a question germane to, though not necessarily decisive of, the controversy, such decision is not a *dictum* but is a judicial act of the court which it will thereafter recognize as a binding decision." *Chase v. American Cartage Co.,* 176 Wis. 235, 238, 186 N.W. 598, 599 (1922).

Following the *Taylor* analytical framework, we consider each of the challenged statutes to determine whether it violates the privilege and immunities clause.

(a) *Gain On the Sale of a Principal Residence.* We are bound by the determination in *Taylor* that the 1975 version of sec. 71.05(1)(a)5, Stats., does not violate the privileges and immunities clause. *Taylor* does not, however, preclude us from holding that sec.

"the appropriate degree of inquiry is that necessary to protect the competing constitutional value from erosion." Because the privileges and immunities clause implicates not only the individual's right to nondiscriminatory treatment but also "the structural balance essential to the concept of federalism," the Supreme Court cases "reflect an appropriately heightened concern for the integrity of the Privileges and Immunities Clause by erecting a standard of review substantially more rigorous than that applied to state tax distinctions among, say, forms of business organizations or different trades and professions." *Id.* at 662, 663.

A more rigorous standard of review is justified under the privileges and immunities clause because nonresidents cannot vote. *See Taylor,* 106 Wis. 2d at 328, n. 10, 316 N.W.2d at 818 (The privileges and immunities clause is an equal protection clause for nonresidents, who need special protection because they cannot vote. Ely, *Democracy and Distrust: A Theory of Judicial Review* 82–85 (1980)).

71.05(1)(a)5, Stats. (1979–80), no longer meets the legitimate state objective of raising revenue by a tax system which equitably allocates the tax burden. We so hold.

In *Taylor,* 16 Wis. 2d at 342–43, 316 N.W.2d at 825, the court found that the legislative justification for taxing Wisconsin residents who acquired new residences in another state differently from those who acquired new residences in Wisconsin was two-fold. First, unless the gain realized on the sale of the Wisconsin residence was taxed immediately, Wisconsin would lose jurisdiction to tax. *Id.* at 343, 316 N.W.2d at 825. Second, problems of administration would be significant if the state were forced to wait until the taxability of the "deferred gain" was conclusively determined. *Id.*

The department argues that these concerns were present in 1980 and this case is controlled by *Taylor.* The department contends that the taxpayers' claims only establish discriminatory treatment, a condition which the *Taylor* court assumed for decisionmaking purposes.

We conclude, however, that in 1980, the degree of discrimination does not bear a "close relation," *Toomer,* 334 U.S. at 396, to the "valid independent reasons," *Id.,* which exist for the discriminatory treatment of soon-to-be-nonresidents who sell their principal residences in Wisconsin and purchase and move to new residences in another state.

We consider first the legitimate state objective of taxing immediately the gain on the sale of the former resident's principal residence, before the state loses jurisdiction to tax. The department stipulated that few, if any, Wisconsin residents sell their principal residence before age fifty-five under circumstances not

qualifying for deferral under sec. 1034(a), IRC. Stipulation of Fact No. 59.[12] The memorandum of the taxpayers' expert, which was admitted by stipulation states: "[I]t is a rare event that a taxpayer makes a disqualifying sale under sec. 1034 of the Internal Revenue Code before attaining age 55." Stipulation of Fact, Exhibit A, Memorandum, J. Dean Bartlett, Jannsen & Co. (Aug. 22, 1984).

For the calendar year 1980, a Wisconsin resident who replaced his or her principal residence in Wisconsin who qualified for deferral under sec. 1034(a), IRC, paid no Wisconsin tax on the transaction. Stipulation of Fact No. 15. In the rare case where a Wisconsin resident made a disqualifying sale after 1981, the amount of gain subject to income tax was reduced by adoption of the federal scheme for taxation of capital gains. Stipulation of Fact No. 23. Prior to 1981, such gain was taxed as ordinary income. Thus, the tax on the gain realized in 1980 on the taxpayer's sale of his or her principal residence became a migration or exit tax, payable almost exclusively by the nonresident and at rates higher than his or her resident counterpart.[13]

---

[12]We accept the parties' stipulation that "[f]ew, if any, Wisconsin residents sell their principal residence before age 55 under circumstances not qualifying for deferral under Section 1034 of the Internal Revenue Code." We note, however, that in 1980, there were 41,113 marriages performed in Wisconsin. Wisconsin Department of Health and Social Services, Bureau of Health Statistics, 1980. If both marriage partners owned homestead real estate prior to marriage, chose to live together after marriage, and sold the excess homestead, an income tax would be due. It is difficult to accept that "few, if any," of the 82,226 people married in 1980 fit this model.

[13]In the Summary and Policy Issue Paper issued in connection with the Executive Revenue Bill for 1981–83, which amended

We next consider the second *Taylor* justification for taxing the former resident's gain immediately—administrative convenience. In *Taylor,* 106 Wis. 2d at 347, 316 N.W.2d at 827, both the department and the taxpayer focused on the department's claim that administrative convenience justified the different treatment of residents and nonresidents.

The department asserts that we are bound by *Taylor* but does not, as it did in *Taylor,* present a record upon which we can base a determination that administrative convenience or inconvenience justifies the discriminatory treatment of nonresidents. It cannot, of course, rely on the record made in *Taylor* because the facts may have changed. In fact, the stipulated facts establish that the state routinely imposes and collects income taxes against nonresidents: (a) Under sec. 71.07, Stats., a Wisconsin income tax is imposed on a nondomiciliary nonresident where a taxable installment sale of Wisconsin real estate is involved. Stipulation of Fact No. 42. (b) For the calendar year 1980, the department audited returns of and collected taxes from nonresidents. Stipulation of Fact Nos. 43 and 44. Further, the problems involved in collecting the tax on the gain realized by a former resident on the sale of his or her principal residence exist whether the tax is presently imposed or is deferred. Stipulation of Fact No. 46.

---

sec. 71.05(1)(a)5, Stats., to limit its application to tax years before 1982, the department noted that the law represented a substantial hardship to families needing cash to buy a new home and to pay moving expenses and had a detrimental impact on Wisconsin's business climate; that taxable income realized under the law was taxed at the highest state income tax in the nation; and that repeal of sec. 71.05(1)(a)5, would improve the equity of the Wisconsin income tax system. Stipulation of Fact Nos. 7, 8, 9 and 10.

In contrast, the only stipulated fact tending to suggest administrative inconvenience is that in 1980 at least 1.4% of taxfilers reported a gain realized on the sale of their Wisconsin principal residence when their new residence was located outside of Wisconsin. Stipulation of Fact No. 66. However, the department does not present a record as to how many of those taxfilers can be anticipated to sell their new residences under circumstances not qualifying for deferral under sec. 1034(a), IRC. The Wisconsin experience that few, if any, residents sell their principal residence before age fifty-five under circumstances not qualifying for deferral under sec. 1034(a), IRC, is likely to be duplicated in whatever state the former resident settles. Thus, only a small percent of the 1.4% of the 1980 taxfilers who reported a gain on the sale of their principal residences may be expected to ultimately realize a taxable gain. Ensuring collection of that occasional tax by taxing the gain upon sale of his or her principal residence and removal of the taxpayer from the state does not have a substantial relation to the legitimate state objective of raising revenue by a tax system which allocates the tax burden equitably.

Wisconsin taxes the gain on the sale of principal residences almost exclusively to nonresidents. This is not constitutionally acceptable. *See Austin v. New Hampshire,* 420 U.S. 656 (1975) (state commuters income tax which fell exclusively on nonresidents without offset violated privileges and immunities clause). The tax no longer furthers a legitimate state objective because it does not allocate the tax burden equitably. Sec. 71.05(1)(a)5, Stats., does not "stay within the limits set by the federal constitution for the protection of individuals and national unity." *Taylor,*

106 Wis. 2d at 330, 316 N.W.2d at 819. We conclude that sec. 71.05(1)(a)5 violates the privileges and immunities clause.[14]

(b) *Nondeductibility of Employment-Related Moving Expenses. Taylor,* 106 Wis. 2d at 351–52, 316 N.W.2d at 829–30, quoted with approval the following statement of Professor Walter Hellerstein:

> *Shaffer v. Carter* [252 U.S. 37, 56–57 (1920)] established and *Travis v. Yale & Towne Manufacturing Co.* [252 U.S. 60, 75–76 (1920)] reiterated the principle that a state may limit the nonresident's deduction of expenses, losses, and the like to those incurred in connection with the production of income within the taxing state. At least insofar as the expenses relate to the nonresident's efforts to earn income, the proposition is eminently reasonable, because the state's jurisdiction to tax such income is similarly confined. Most state income tax statutes specify the criteria and methods the nonresident taxpayer must follow in allocating or apportioning to the taxing state expense deductions associated with income producing activities in that state. While the relation of a particular expense item to activity in the taxing state may present troublesome factual questions, the controlling legal doctrine is both settled and sensible. (Notes omitted.) Hellerstein, *Some Reflections on the State Taxation of a Nonresident's Personal Income,* 72 Mich. L. Rev. 1309, 1346 (1974).

---

[14]Because we have found that sec. 71.05(1)(a)5, Stats., violates the privileges and immunities clause, we do not reach the question of whether the statute violates the taxpayers' constitutionally protected right to interstate travel, denies them equal protection of the laws, or violates the commerce clause.

The court concluded that because Wisconsin does not tax income earned by former residents in their new domicile, Wisconsin has no constitutional obligation to allow deductions for expenses incurred to generate income that is beyond its taxing jurisdiction. *Taylor,* 106 Wis. 2d at 352, 316 N.W.2d at 830.

The taxpayers submit that *Taylor* was based on substantive errors of fact and law and, therefore, is not dispositive of the issue. We are not at liberty to correct claimed errors of law of the Wisconsin Supreme Court. We are required to adhere to precedent. *Nordeen,* 132 Wis. 2d at 170, 389 N.W.2d at 830. We therefore confine our review to claimed errors of fact, or differences in fact, which may distinguish this case from *Taylor.*

The parties stipulate that sec. 71.05(1)(a)7, Stats., is derived from sec. 217, IRC. Stipulation of Fact No. 57. The taxpayers claim there is in issue here "qualified residence sale ... expenses" under sec. 217(b)(2), IRC, which were not in issue in *Taylor.* They claim that the *Taylor* court's reference to "moving expenses" did not include "qualified residence sale ... expenses." Even if we give the taxpayers the benefit of their argument, we conclude that "qualified residence sale ... expenses" as that term is used in sec. 217(b)(1)(E), are incurred in connection with the generation of income and are subject to the *Taylor* holding.

26 U.S.C. sec. 217(b)(1)(E) (1976), defines "moving expense" to include "the reasonable expenses ... constituting qualified residence sale ... expenses." The taxpayers may be correct that such expenses are not "business expenses" but they are "expenses in-

curred to generate income that is beyond [Wisconsin's] taxing jurisdiction." *Taylor,* 106 Wis. 2d at 352, 316 N.W.2d at 830. Such expenses are included within "moving expenses" as used in sec. 71.05(1)(a)7, Stats. Since they are incurred to generate income that is beyond Wisconsin's taxing jurisdiction, Wisconsin has no constitutional obligation to allow their deduction from income earned within Wisconsin. We conclude that sec. 71.05(1)(a)7 does not violate the privileges and immunities clause.

(c) *Proration of Exemptions.* The taxpayers contend that the exemption allowed a full-year resident is "an unqualified act of legislative grace, conferring an income tax benefit, irrespective of the amount of income taxed and undiminished by allowances for taxes paid to other states." They claim that the department's asserted basis for this discrimination— that the full-year resident must pay income taxes on a full year's income—was found to be unconstitutional in *Travis v. Yale & Towne Manufacturing Co.,* 252 U.S. 60 (1920) and *Zobel v. Williams,* 457 U.S. 55 (1982).

In *Travis,* New York state granted residents a personal exemption from the tax imposed on income earned in the state, while no exemption from the tax was granted nonresidents. The Court said it could not find adequate ground for the discrimination and held that "it is an unwarranted denial to the citizens of Connecticut and New Jersey of the privileges and immunities enjoyed by citizens of New York." *Id.,* 252 U.S. at 80.

In *Zobel,* Alaska gave to adult citizens a cash dividend based on the number of years of residence since statehood in 1959. The court found that Alaska

had shown no valid state interest rationally served by the distinctions it made among its citizens and declared that the law violated the guarantees of equal protection. *Id.*, 457 U.S. at 65. Thus, *Zobel* is an equal protection case because it involved discrimination among its citizens. *See Zobel* at 59 n. 5 ("The [Privileges and Immunities] Clause is ... not applicable to this case.").

*Travis* and *Zobel* do not support the taxpayers' contention that they held unconstitutional the kind of discrimination alleged to be found in sec. 71.09(6p)(d)1, Stats. The most that these cases establish is a principle common to the privileges and immunities clause, the commerce clause and the equal protection clause: any classification of citizens must be rationally based and serve legitimate state interests.

The history of the privileges and immunities clause is well documented. *Austin,* 420 U.S. at 660–61; *Zobel,* 457 U.S. at 79–80 (O'Connor, J., concurring). "[T]he provision was carried over [from the Articles of Confederation] into the comity article of the Constitution in briefer form but with no change of substance or intent, unless it was to strengthen the force of the Clause in fashioning a single nation." *Austin,* 420 U.S. at 661 (footnote omitted).

The analytical framework for review under the privileges and immunities clause includes a weighing of the tendency of the statute to erode the "norm of comity" established by the clause. *Austin,* 420 U.S. at 660. We conclude that sec. 71.09(6p)(d)1, Stats., has little, if any, tendency to erode that norm of comity.

The statute has a rational basis and furthers the legitimate state objective of allocating the income tax burden equitably. To allow the departing resident a

personal exemption equal to the full-year resident's would unfairly discriminate against the resident. The privileges and immunities clause does not shield a nonresident from treatment different from that accorded residents, only from treatment where there is no valid reason for it except that the nonresident is a citizen of another state. *Taylor,* 106 Wis. 2d at 337, 316 N.W.2d at 823.

(d) *Proration of Property Tax Credit.* Under sec. 71.53(6), Stats., the property tax credit allowed a nonresident is reduced by one-twelfth for each month in which the taxpayer is not domiciled in Wisconsin. The taxpayers argue that the department's justification for the different treatment—that the full-year resident must pay income taxes on income earned during the entire taxable year, while the nonresident does not—is unconstitutional on its face under *Zobel,* 457 U.S. at 64. *Zobel* involved discrimination among residents and is inapposite.

We conclude that sec. 71.53(6), Stats., furthers the legitimate state objective of allocating equitably the burden of taxation. To allow the former resident the full twelve percent credit allowed under sec. 71.53(2) would discriminate against taxpayers who paid rent or property taxes for the entire tax year. "The privileges and immunities clause protects the nonresident 'against discriminatory taxation, but gives him no right to be favored by discrimination or exemption.'" *Taylor,* 106 Wis. 2d at 346, 316 N.W.2d at 827 (citation omitted).

## III.

## THE RIGHT TO TRAVEL

The taxpayers argue that secs. 71.05(1)(a)7, 71.09(6p)(d)1 and 71.53(6), Stats., violate their right to interstate migration. The taxpayers do not assert that these provisions actually deterred their exercise of their right to travel interstate. They need not make that showing. *Dunn v. Blumstein,* 405 U.S. 330, 339–40 (1972). They need only show that the classification made by the challenged statutes penalizes the exercise of their right to travel. *Id.* at 340. If it does, the compelling-state-interest test is triggered, and the state must show that the discrimination furthers a compelling state interest. *Id.* at 340–41.

The right to travel is an *"unconditional* personal right," a right whose exercise may not be conditioned. *Dunn,* 405 U.S. at 341, quoting *Shapiro v. Thompson,* 394 U.S. 618, 643 (1969) (Stewart, J., concurring). But state regulations which affect that right only indirectly need not satisfy the compelling-state-interest test in order to survive.

The source of the right to travel has not been successfully ascribed to a particular constitutional provision. *Zobel,* 457 U.S. at 60 n. 6. "The reason, it has been suggested, is that a right so elementary was conceived from the beginning to be a necessary concomitant of the stronger Union the Constitution created." *Shapiro,* 394 U.S. at 630–31. For purposes of our review of the cases and analysis of the implications of the challenged statutes vis-a-vis the right to

travel, we keep in mind that the right has been uniformly considered as necessary to a federal nation.

In *Crandall v. Nevada,* 73 U.S. (6 Wall.) 35 (1868), the court declared unconstitutional a state tax on interstate travelers. The court quoted with approval the following statement of Chief Justice Taney in *The Passenger Cases,* 7 How. 283, 492 (1849) (Taney, C.J., dissenting):

> We are all citizens of the United States, and as members of the same community must have the right to pass and repass through every part of it without interruption, as freely as in our own states. And a tax imposed by a state, for entering its territory or harbors, is inconsistent with the rights which belong to citizens of other states as members of the Union, and with the objects which that Union was intended to attain. Such a power in the states could produce nothing but discord and mutual irritation, and they very clearly do not possess it.

*Crandall,* 73 U.S. (6 Wall.) at 49.

In *Williams v. Fears,* 179 U.S. 270 (1900), the court upheld a tax levied on "emigrant agents"—persons who hired laborers to work in other states—against the charge that its effect was to abridge the privileges and immunities of a citizen to move from one state to another. The court said that if the tax affected the freedom of egress from the state, it did so only incidentally and remotely. *Id.* at 274.

In *Hendrick v. Maryland,* 235 U.S. 610 (1915), the court rejected the appellant's contention that the constitutional right of citizens to pass into and through the state of Maryland was violated by a statute imposing automobile registration fees. The

court said: "There is no solid foundation for the claim that the statute directly interferes with the rights of citizens of the United States to pass through the state, and is consequently bad according to the doctrine announced in Crandall v. Nevada, 6 Wall. 35, 18 L. Ed. 745." *Id.* at 624.

The durational-residence-requirement trilogy —*Shapiro,* 394 U.S. at 618, *Dunn,* 405 U.S. at 330, and *Memorial Hospital v. Maricopa County,* 415 U.S. 250 (1974)—involved statutory requirements of residence in the state for at least one year before becoming eligible to vote, as in *Dunn,* or to receive welfare or medical benefits, as in *Shapiro* and *Memorial Hospital.* The requirements penalized a new resident for having moved to the state by rendering him or her ineligible for one year to vote or to receive welfare or medical benefits. The penalty was direct and immediate. In *Memorial Hospital,* the court held that medical care is as much "a basic necessity of life" to an indigent as welfare assistance, and therefore the state's prior residency requirement was subject to the compelling-state-interest test. *Id.,* 415 U.S. at 259, 262.

The *Shapiro—Dunn—Memorial Hospital* cases have not, however, settled "the ultimate parameters of the Shapiro penalty analysis." *Memorial Hospital,* 415 U.S. at 259. *Shapiro* did not make clear the amount of impact required to give rise to the compelling-state-interest test. *Memorial Hospital,* 415 U.S. at 256–257. The *Shapiro* court spoke of the requisite impact in two ways: Whether the residency waiting period would deter migration, and the extent to which the requirement served to penalize the exercise of the right to travel. *Memorial Hospital,* 415 U.S. at 257.

159

■

We conclude that we should apply *Shapiro*'s two-step approach to determine whether we must subject the challenged statutes to the compelling-state-interest test.

Section 71.05(1)(a)7, Stats., does not permit a Wisconsin taxpayer to deduct for Wisconsin income tax purposes moving expenses deductible for federal income tax purposes. The impact of the statute is not enough to give rise to the compelling-state-interest test. The impact of the additional income tax is not sufficient to deter a person from becoming a Wisconsin resident or moving from the state in connection with his or her employment. The penalty which the moving resident incurrs affects the right to travel indirectly and to a minimal extent.

Sections 71.09(6p)(d)1 and 71.53(6), Stats., in requiring proration of the taxpayer's personal exemptions and property tax credit do no more than the taxpayer might expect. Taxpayers are not likely to see anything unfair in the requirements of these statutes. The impact of these statutes is not sufficient to trigger the compelling-state-interest test. They are unlikely to deter migration. The penalty which the taxpayer incurrs affects the right to travel only indirectly and minimally.

■

Therefore we need not subject the challenged statutes to the compelling-state-interest test. Since we have found that they meet the "substantial relation" test, we conclude they do not violate the taxpayers' right to travel.

## IV.

## EQUAL PROTECTION

The taxpayers contend that secs. 71.05(1)(a)7, 71.09(6p)(d)1 and 71.53(6), Stats., do not "rationally further[] a legitimate state purpose" and thus deny them the equal protection of the laws.

The fourteenth amendment to the federal constitution guarantees the equal protection of the laws to anyone who may be within the territorial jurisdiction of a state. *Zobel,* 457 U.S. at 69 (Brennan, J., concurring). "Generally, a law will survive [equal protection] scrutiny if the distinction it makes rationally furthers a legitimate state purpose." *Id.* at 60. The taxpayers cite *Zobel*'s statement that some particularly invidious distinctions are subject to more rigorous scrutiny. *Id.* However, they do not claim that the distinctions between residents and nonresidents made by secs. 71.05(1)(a)7, 71.09(6p)(d)1 and 71.53(6), Stats., are particularly invidious. They agree that we scrutinize the statutes to determine whether they bear a rational relation to a legitimate state objective. Since we have concluded that the challenged statutes survive our scrutiny under the more rigorous "substantial reason for the discrimination" privilege and immunities test, we can hardly conclude that they do not survive equal protection scrutiny.

It is rational for the state to not allow former residents to deduct the expenses of moving to another state in connection with their employment. There is a legitimate distinction between a resident who moves to another place of employment within the state and a

resident who leaves Wisconsin for employment in another state.

It is rational for the state to require proration of personal exemptions based on the number of months the taxpayer resides in the state. It is rational for the state to require proration of the property tax credit based on the number of income-producing months the taxpayer resides in Wisconsin. The statutes which employ these distinctions recognize legitimate differences between residents and former residents.

■ Secs. 71.05(1)(a)7, 71.09(6p)(d)1 and 71.53(6), Stats., make distinctions between residents and former residents which rationally further the legitimate state objective of raising revenue by means of a tax system which equitably allocates the burden of taxation. We conclude therefore that the challenged statutes do not deny the taxpayers the equal protection of the laws.

## V.

## THE COMMERCE CLAUSE

The taxpayers argue that the burden of the challenged taxes under secs. 71.05(1)(a)7, 71.09(6p)(d)1, 71.53(6), Stats., falls exclusively on nonresidents as a consequence of exercising an interest—migrating to pursue employment—protected by the commerce clause. Hence, they argue, the taxes are discriminatory per se.

■ The commerce clause provides that "The Congress shall have power ... To regulate commerce ... among the several states ...." Art. I, sec. 8, cl. 3, U.S. Const. The clause limits the power of the states to

erect barriers against interstate trade. *Maine v. Taylor,* 477 U.S. 131, 137 (1986). Attacks on local and state legislation under the commerce clause have most frequently focused on laws shielding in-state industries from out-of-state competition, laws amounting to "simple economic protectionism." *Id.* at 148. *See, e.g., Brown-Forman Distillers v. N.Y. Liquor Auth.,* 476 U.S. 573 (1986); *Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263 (1984); *Edgar v. Mite Corp.,* 457 U.S. 624 (1982); *Maryland v. Louisiana,* 451 U.S. 725 (1981); *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456 (1981); *Hughes v. Oklahoma,* 441 U.S. 322 (1979); *Philadelphia v. New Jersey,* 437 U.S. 617 (1978); *Pike v. Bruce Church,* 397 U.S. 137 (1970); and *Shafer v. Farmers Grain Co.,* 268 U.S. 189 (1925).

In *Pike v. Bruce Church,* 397 U.S. at 142, the court said:

> Although the criteria for determining the validity of state statutes affecting interstate commerce have been variously stated, the general rule that emerges can be phrased as follows: Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.

The taxpayers do not claim that the challenged statutes are laws amounting to "simple economic protectionism." Their claim is that by denying the departing resident a deduction of his or her moving expenses for state income tax purposes, requiring that he or she prorate his or her personal exemptions, and limiting his or her credit for property taxes paid, the

state has created a disincentive to migration into Wisconsin and a deterrent to the mobility of labor. Contrary to the usual case, the claim is not that Wisconsin seeks, by its tax laws, to create a favorable climate for local industry at the expense of other states, but that Wisconsin's tax laws create an unfavorable climate for its own industries and labor force. We do not believe that the commerce clause was intended to extend its protection to individuals who claim a disadvantage from such state tax laws. The rights of those individuals are protected by the other constitutional provisions which the taxpayers in this case claim have been violated.

In any event, the challenged statutes affect interstate commerce only incidentally and remotely. In *Hump Hairpin Mfg. Co. v. Emmerson,* 258 U.S. 290, 294–95 (1922) the court stated the test to be applied when it is claimed that a state tax burdens interstate commerce:

> The turning point of [the] decisions is whether, in its incidence, the tax affects interstate commerce so directly and immediately as to amount to a genuine and substantial regulation of, or restraint upon, it, or whether it affects it only incidentally or remotely, so that the tax is not in reality a burden, although in form it may touch, and, in fact, distantly affect, it.

We conclude that secs. 71.05(1)(a)7, 71.09(6p)(d)1, and 71.53(6), Stats., affect interstate commerce only incidentally so that the taxes levied thereby are not in reality a burden on interstate commerce. We therefore conclude that the challenged statutes do not violate the commerce clause.

164

*By the Court.*—Judgment affirmed in part, reversed in part, and cause remanded with directions to enter judgment consistent with this opinion.