Karroll L. PURDY and Dorothy D. Purdy, individually and on behalf of all other similarly situated, Plaintiffs,

v.

SECURITY SAVINGS & LOAN ASSOCIATION, et al.,
Defendants.

Ronald B. GALECKE, individually and on behalf of all others similarly situated, Plaintiffs,

v.

SECURITY SAVINGS & LOAN ASSOCIATION, et al.,
Defendants.

Nos. 88–C–313, 88–C–405.

United States District Court,
E.D. Wisconsin.

Dec. 22, 1989.

Robert Silverstein, Silverstein & Associates, Thomas K. Archie, Milwaukee, Wis., Art Aufman, Edward Joyce, Joyce & Kubasiak, Chicago, Ill., for plaintiffs.

William H. Alverson, Michael Ash, Godfrey & Kahn, S.C., Michael L. Sorgi, Schoendorf & Sorgi, Milwaukee, Wis., for defendants Security Financial Corp. & Security Savings & Loan Assn.

Jon P. Christiansen, Foley & Lardner, Milwaukee, Wis., for defendants Security Spring & Boe Investors, Ltd.–82, Larry K. Boe and William A. Spring.

Daniel Conley, Quarles & Brady, Milwaukee, Wis. (Miriam F. Miquelon, Miquelon & Associates, Chicago, Ill., of counsel), for defendants Security Spring & Boe Inv. Corp., Spring & Boe Companies, Inc., Security Spring & Boe 82 Partners, Security Spring and Boe Financial Companies, Inc.

## OPINION AND ORDER

CURRAN, District Judge.

## I. PRIOR PROCEEDINGS

Three disappointed investors commenced the two above-captioned cases which have been consolidated for purposes of settlement. Karroll and Dorothy Purdy (Case No. 88–C–313) and Ronald B. Galecke (Case No. 88–C–455) are suing Security Savings and Loan Association, Security Spring and Boe Investment Corporation, Security Savings & Boe Financial Companies, Inc., Larry K. Boe and William A. Spring [1] seeking money damages and attorney fees. In their twenty-seven count First Amended Complaint, the Purdys claim that the defendants defrauded them of the profit and value of their investment in a real estate limited partnership (Security Spring & Boe Investors, Ltd.–82) by violating all four sections of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(a), (b), (c) & (d). They also assert state law claims for violations of the Wisconsin Organized Crime Control Act, Wis.

Stat. §§ 946.80–.87. In his Complaint, Galecke seeks treble damages for RICO violations in connection with a similar limited partnership investment in Security Investors, Ltd.–II. The court has jurisdiction over these claims pursuant to 18 U.S.C. § 1964(a) & (c); 28 U.S.C. § 1331; and the doctrine of pendent jurisdiction.

After the defendants' motion seeking summary judgment in the Purdys' case was denied, the court convened a settlement conference and, several weeks thereafter, the parties agreed, in principal, to settle both cases. To implement the settlement and pursuant to the agreement of the parties, the court certified a class of plaintiffs for settlement purposes. This class is described thus:

> [T]he Settlement Class for all purposes contemplated by the Settlement Agreement shall be defined as "all of the original purchasers of one or more limited partnership interests in Security Spring & Boe Investors, Ltd. 82 and/or Security Investors, Ltd. II and their respective transferees;" and, for purposes of the final distributions from the Settlement Fund, as "all persons, other than the Defendants, who were the original purchasers of one or more limited partnership interests in Security Spring & Boe Investors, Ltd. 82 and/or Security Investors, Ltd. II excepting any person who has asserted a claim against any of the Defendants based upon that person's purchase of limited partnership interest(s) in either of the Partnerships and has executed a release of one or more of the Defendants in compromising such claim."

Order of August 17, 1989 at ¶ A.

After a hearing on August 15 and 16 of 1989, this court determined that the proposed settlement between the class members and the defendants was fair, reasonable and adequate. *See* Order of August

---

**1.** All claims against former defendant Security Spring & Boe Investors, Ltd.–82 were dropped and it was dismissed as a party from the *Purdy* case. *See* Order of October 24, 1988. Prior to settlement, former defendants Security Financial Corporation, Security Spring & Boe Associates, Inc., Security Investors, Ltd. II, and Security Spring and Boe–82 Partners, Inc. were dismissed from the *Galecke* case. *See* Order of August 17, 1989.

17, 1989. The terms are set forth in the "Settlement Agreement" filed June 13, 1989. The Settlement Fund available for distribution under these terms now totals approximately $4,000,000.00, plus accrued interest.

## II. ATTORNEY FEES

The Settlement Agreement provides that the legal fees of the plaintiffs' counsel shall be paid out of the Settlement Fund in an amount to be fixed by the court. *See* Settlement Agreement at ¶ 8. Accordingly, on July 11, 1989, plaintiffs' counsel submitted a "Petition and Memorandum in Support of Class Counsels' Application for Attorneys' Fees and the Reimbursement of Litigation Expenses," which includes affidavits documenting the time expended by the plaintiffs' two law firms through June 30, 1989. Because the application did not contain sufficient information, the court ordered the attorneys to submit supplemental materials. *See* Order of August 17, 1989.

Plaintiffs' attorneys now jointly request an award of attorneys' fees in the amount of $500,000.00 to be paid from the Settlement Fund, together with reimbursement of expenses in the amount of $11,089.13. Based on the current market rates which these attorneys allege they charge, the proposed lodestar amount is $228,704.00 for 2,008.35 hours of work over the course of fifteen months. The attorneys want the court to multiply the lodestar by 2.19 to reflect risk of nonpayment and superior performance.

At the settlement hearing a number of the class members objected to the proposed lodestar fees and particularly to the multiplier on the ground that the Settlement Fund is inadequate. Under the terms of the Settlement Agreement the plaintiffs will receive approximately one-third of the purchase price of each of their shares in the two limited partnerships. The basic thrust of the objections was that the attorneys should not be paid unless or until the plaintiffs are made whole. The plaintiffs will not be made whole by this settlement, but it would be patently unfair to expect class counsel to work for a reduced fee or

no fee. These attorneys are not the cause of the plaintiffs' investment losses and without their efforts the class members would likely have suffered a total loss. Class members were apprised of the amount of the requested fees prior to the settlement hearing and each member had the option to opt out of the lawsuit and pursue a separate remedy. *See* Settlement Agreement at ¶ 8; Notice of Hearing, Proposed Settlement and Conditional Class Action at ¶ 7. Under these circumstances, these objections have limited merit. Nevertheless, because of the concerns expressed by the objectors, the court has taken time to examine the petition carefully and to require additional supporting documentation.

### A. *Legal Basis*

The United States Supreme Court has long recognized that, when a plaintiff-representative successfully establishes or protects a fund in which other class members have a beneficial interest, the costs of litigation may be spread among the fund's beneficiaries. *See Trustees v. Greenough*, 105 U.S. 527, 26 L.Ed. 1157 (1882); *Mills v. Electric Auto–Lite Company*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *Alyeska Pipeline Service Company v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Class members would be unjustly enriched if they were allowed to benefit from a fund created by the efforts of their attorneys without sharing in the payment of the attorneys' fees. *See Boeing Company v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980); *Rothfarb v. Hambrecht*, 649 F.Supp. 183, 237 (N.D.Cal. 1986); *Fickinger v. C.I. Planning Corporation*, 646 F.Supp. 622, 632 (E.D.Pa.1986).

When a common fund is available, attorneys for the successful parties may petition for a portion of the fund as compensation for their efforts. *See Boeing*, 444 U.S. at 478, 100 S.Ct. at 749. Once an attorney files such a petition, his role changes from one of fiduciary for his clients to that of a claimant against the fund created for the clients' benefit. Defendants, having made their contribution to

the settlement, are uninterested in the distribution, so (as in this case) they typically do not offer any opposition to the fee petition. It is, therefore, incumbent upon the trial court to become the fiduciary for the fund's beneficiaries and to act with "moderation and a jealous regard to the rights of those who are interested in the fund" in determining what is a reasonable fee to be paid to class counsel for their efforts in settling the litigation and creating the fund. *See Skelton v. General Motors Corporation,* 860 F.2d 250, 253 (7th Cir.1988), *cert. denied,* —— U.S. ——, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989); *City of Detroit v. Grinnell Corporation,* 495 F.2d 448, 469 (2d Cir.1974), quoting *Trustees v. Greenough,* 105 U.S. 527, 536, 26 L.Ed. 1157 (1881).

### B. *Lodestar*

Although the plaintiffs' attorneys have urged this court to consider a percentage fee arrangement, the accepted method of determining fees in this circuit is the modified "lodestar" method. First, the court must calculate the lodestar, taking into consideration the number of hours and how they were spent and the value of each attorney's services to the class. Second, the court may adjust the lodestar to reflect the contingent nature of the attorneys' undertaking. This requires the court to assess the likelihood of success in obtaining a judgment or settlement as measured at the time the attorney began work on the case. *See Skelton v. General Motors Corporation,* 860 F.2d 250, 255 (7th Cir.1988), *cert. denied,* —— U.S. ——, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989). The party seeking attorney fees "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983).

### 1. *Hours*

Based on these directives, the court's starting point for determining a just and adequate fee to be paid to counsel for the prevailing plaintiff class in this case is to examine the number of hours expended in prosecution of the litigation. To substantiate the number of hours claimed, class counsel have submitted a ninety-two page compilation of time sheet entries. However, this document does not set forth a total of hours expended. The court has been left to make that calculation, as follows:

| Attorneys | Hours[2] |
|---|---|
| Joyce and Kubasiak, P.C. through June 30, 1989 | 983.00 |
| Robert Silverstein through June 30, 1989 | 136.60 |
| Thomas K. Archie through June 30, 1989 | 663.75 |
| Attorney Edward T. Joyce projected hours | 25.00 |
| Attorney Robert Silverstein projected hours | 25.00 |
| Attorney Arthur W. Aufmann projected hours | 50.00 |
| Attorney Thomas Archie projected hours | 50.00 |
| paralegals projected hours | 75.00 |
| TOTAL: | 2,008.35 |

Upon the court's directive the fee petition was reorganized according to hours expended on each task. Nevertheless, the entries are not completely informative. It appears that the majority of the attorneys' time was spent conferencing, reviewing and telephoning. Overall, the court believes that 2,008.35 is a high number of hours for the fifteen months preceding settlement in these two cases, particularly in a case where the lead law firm claims to have vast experience in similar lawsuits. One person would have had to work 251 eight-hour days to match this total. Except for filing the complaint, there was no court-related activity in the *Galecke* case until it was transferred here pursuant to the settlement agreement. In the *Purdy* case the plaintiffs engaged in discovery, responded to a discovery motion and a motion for summary judgment, and partially briefed a

---

**2.** As required by case law, Attorneys Joyce and Silverstein have alleged that the time records submitted to the court are based on contemporaneously recorded time records kept by their firms. *See Hensley v. Eckerhart,* 461 U.S. 424, 438 n. 13, 103 S.Ct. 1933, 1942 n. 13, 76 L.Ed.2d 40 (1983).

motion for class certification. The bulk of the remaining hours were spent on settlement and on telephone calls from class members.

■ Having reviewed the hundreds of entries in the "Summary of Class Counsel Hours by Category," this court, like many others, finds itself unable to ascertain with certainty which hours should be excluded from the lodestar.[3] However, the following entries stand out as clearly unnecessary because they involve publicity rather than legal work, so they will be subtracted:[4]

| Date | Attorney | Activity | Time |
|------|----------|----------|------|
| 1/20/89 | Archie | Conference with Atty. Bob Silverstein Re: Milwaukee Magazine | .4 |
| | Silverstein | Conference with Atty. Thomas Archie Re: Milwaukee Magazine | .4 |
| 2/16/89 | Archie | Telephone call to Business Journal Re: Motion to Certify | 1.2 |

The Seventh Circuit has stated that, when an attorney's right to compensation depends upon the creation of a common fund, time spent collecting the fee cannot be included in the compensation. *See Mills v. Eltra Corporation,* 663 F.2d 760, 761 (7th Cir.1981). Therefore, the following hours must also be excluded:

| Date | Attorney | Activity | Time |
|------|----------|----------|------|
| 5/17/89 | Aufmann | telephone conference with co-counsel Re: fees | .30 |
| 5/18/89 | Silverstein | telephone call with Atty. Aufmann Re: fees from settlement | .70 |
| 5/18/89 | Aufmann | conference with Atty. Steven Rotunno Re: fees | .30 |
| 5/18/89 | Aufmann | telephone conference with co-counsel Re: fees | .70 |
| 5/18/89 | Rotunno | office conference with Atty. Aufmann Re: fees | .30 |
| 6/16/89 | Aufmann | telephone conference with Atty. Rotunno Re: fee petition | .30 |

And finally, the 150 "projected hours" of the attorneys will not be included. Hours claimed must be supported by contemporaneous time records or other evidence. *See Hensley v. Eckerhart,* 461 U.S. 424, 438 n. 13, 103 S.Ct. 1933, 1942 n. 13, 76 L.Ed.2d 40 (1983); *Bennett v. Central Telephone Company of Illinois,* 619 F.Supp. 640, 649 (N.D.Ill.1985). The fee petitioners could have supplied supplementary time sheets verifying the hours projected in July of 1989, but they have failed to do so, so the

---

**3.** *See, e.g. In re Activision Securities Litigation,* 723 F.Supp. 1373 (N.D.Cal.1989).

**4.** *See Cantor v. Detroit Edison Company,* 86 F.R.D. 752, 771 (E.D.Mich.1980) (expense of employing public relations firm found not necessary to lawsuit).

hours will be disallowed. *See Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corporation,* 540 F.2d 102, 121 (3d Cir.1976) (estimated "future time" allowed only when supported by hearing testimony); *Bennett,* 619 F.Supp. at 648–49 (fees may be denied for failure to substantiate time).

In addition to the attorneys' hours, counsel are asking for 121.00 hours of paralegal services at a market rate of $60.00 per hour and for 258.10 hours of law clerk time at a market rate of $55.00 per hour. The United States Supreme Court has approved separate billing for paralegals and law clerks, if it is the practice in the relevant market. *See Missouri v. Jenkins by Agyei,* —— U.S. ——, 109 S.Ct. 2463, 2469–71, 105 L.Ed.2d 229 (1989); *Riverside v. Rivera,* 477 U.S. 561, 566 n. 2, 106 S.Ct. 2686, 2690 n. 2, 91 L.Ed.2d 466 (1986). The Seventh Circuit has sanctioned the practice. *See Cameo Convalescent Center v. Senn,* 738 F.2d 836, 846 (7th Cir.1984), *cert. denied,* 469 U.S. 1106, 105 S.Ct. 780, 83 L.Ed.2d 775 (1985). Therefore, the court will include hourly fees for paralegals and law clerks in its award. Because seventy-five "projected" hours of paralegal time have not been documented by time records, they will be disallowed as will five-and-one-half hours of time claimed by a paralegal to cite check the plaintiffs' brief in support of class certification. The six-and-one-half hours claimed by the paralegal are clearly excessive. The brief, as filed, contained only forty citations.

Subtracting 154.6 hours of disallowed attorney time and 80.5 hours of disallowed paralegal time from the proposed total of 2,008.35 hours, leaves a remainder of 1773.25 hours to be multiplied by prevailing market rates during the next stage of the lodestar calculation.

2. *Prevailing Market Rates*

The partners, associates, paralegals and law clerks who worked on the plaintiffs' case allege that they currently bill at the following rates: [5]

Joyce and Kubasiak, P.C.
Chicago, Illinois

| LAWYER | RATE |
| --- | --- |
| Edward T. Joyce (admitted to bar 1967) | $250.00[6] |
| Arthur W. Aufmann (admitted to bar 1982) | $115.00 |
| Steven J. Rotunno (admitted to bar 1978) | $170.00 |
| Colleen T. Tyree (admitted to bar 1986) | $100.00 |
| John T. Doyle (admitted to bar 1980) | $125.00 |
| Paul A. Castiglione (admitted to bar 1987) | $ 80.00 |
| Gerald E. Kubasiak (admitted to bar 1968) | $225.00 |
| Mark E. Resnik (admitted to bar 1980) | $125.00 |
| Paralegals | $ 60.00 |
| Law Clerks | $ 55.00 |

Robert Silverstein & Associates, S.C.
Milwaukee, Wisconsin

| | |
| --- | --- |
| Robert Silverstein (admitted to bar 1951) | $200.00 |
| Thomas K. Archie (admitted to bar 1986) | $100.00 |

The Supreme Court has stated that:

To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. A rate determined in this way is normally deemed

---

**5.** Courts in the Seventh Circuit generally use current rates rather than historical rates to compensate for delay in payment. *See Skelton v. General Motors Corporation,* 860 F.2d 250, 255 n. 5 (7th Cir.1988), *cert. denied,* —— U.S. ——, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989); *Bennett v. Central Telephone Company of Illinois,* 619 F.Supp. 640, 651 (N.D.Ill.1985).

**6.** Only two years before the instant litigation commenced, Joyce was asking Illinois courts for $170.00 per hour. *See, e.g. In re Financial Partners Litigation,* No. 82–C–5910, 1986 WL 8037 (N.D.Ill. July 15, 1986) (unpublished). This represents a 47% increase in Joyce's hourly rate!

to be reasonable, and is referred to—for convenience—as the prevailing market rate.

*Blum v. Stenson,* 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984). The attorneys say that they have been unable to locate reports of any case in which fees of this level were actually awarded in a securities fraud case in the Eastern District of Wisconsin. *See* Affidavit of Arthur W. Aufmann at ¶ 2. Instead, to support these rates, the claimants have submitted the affidavits of one Milwaukee attorney (Eugene O. Duffy) who says that he represented a prevailing class which proved unconstitutional treatment of nonresident taxpayers. *See Kuhnen v. Musolf,* 143 Wis.2d 134, 420 N.W.2d 401 (Ct. App.1988).[7] Although he says that counsel in that case were awarded 27.5% of the common fund, Duffy does not reveal the hourly rates of the attorneys involved, so this information has no relevance to a determination of fees by the lodestar method.

Class counsel have also submitted affidavits from three Chicago attorneys who claim to bill at the following hourly rates:

| | |
|---|---|
| Jerold S. Solovy | $350.00 – 425.00 |
| Kevin M. Forde | $225.00 |
| William J. Harte | $235.00 |

*See* Supplement to Petition for Attorneys Fees at Exhibits C, D, E (filed August 30, 1989). Only Attorney Forde has alleged that a court actually ordered payment of anything approaching these rates. He says that he was awarded $175.00 per hour in a 1985 civil rights case in this district. *See Squillacote v. United States,* 626 F.Supp. 127 (E.D.Wis.1985).

None of these affidavits contain any information regarding the qualifications, experience or nature of the practices of the Chicago lawyers. Therefore, the affidavits offer little guidance to the court in determining the prevailing hourly rates for legal services comparable to the services at issue here.

Despite these affidavits, the proposed hourly rates appear high, particularly in a case where counsel are also asking for a 2.19 multiplier. However, a recent national survey in *The National Law Journal,* found a number of lawyers charging up to $500.00 per hour. *See Billing,* The National Law Journal, Nov. 20, 1989, at S1–S12. According to this survey, fees in Chicago range from $135.00—$500.00 for partners and $70.00—$200.00 for associates. The three Milwaukee firms listed in the survey reported the following rates:

Foley & Lardner
| | | |
|---|---|---|
| Partners | $120.00 – | $225.00 |
| Associates | $ 65.00 – | $170.00 |

Michael, Best & Friedrich
| | | |
|---|---|---|
| Partners | $140.00 – | $185.00 |
| Associates | $ 80.00 – | $130.00 |

Quarles & Brady
| | | |
|---|---|---|
| Partners | $130.00 – | $250.00 |
| Associates | $ 95.00 – | $125.00 |

Judging from this survey, the partner fees requested by class counsel are on the high end of the Milwaukee spectrum, but are near the middle range of fees charged in Chicago.[8] The only conclusion which the court can draw is that the rates sought by the *Purdy–Galecke* counsel are within the parameters of rates that lawyers working for the largest law firms in this area claim to charge.[9]

Recognizing the difficulty of drawing exact comparisons among attorneys, the Seventh Circuit has said that, for private counsel with fee-paying clients, the best evidence of a fair hourly rate is the hourly rate customarily charged by counsel or his law firm. *See Tomazzoli v. Sheedy,* 804 F.2d 93, 98 (7th Cir.1986). For this reason the court will accept the partner rates At-

---

7. Attorney fees were not an issue considered on appeal.

8. Chicago counsel are not limited to Milwaukee billing rates. *See Chrapliwy v. Uniroyal, Inc.,* 670 F.2d 760, 768 (7th Cir.1982), *cert. denied,* 461 U.S. 956, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983).

9. Both of the plaintiffs' law firms are small law firms.

torneys Joyce and Silverstein say they bill their paying clients.[10] In their resumes, these two lawyers have made a showing that their skill, experience and reputations could command the rates claimed. Joyce's partner, Gerald E. Kubasiak, has submitted no supporting resume, so the court is unable to determine whether his credentials warrant a $225.00 per hour rate and will discount this rate by twenty-five percent.

The rates claimed for the associates range from $170.00 to $80.00. No curriculum vitae have been submitted showing the experience or qualifications of any of these associates except Arthur Aufmann and Thomas Archie. Aufmann's credentials appear to support a rate of $115.00 per hour, so the court will leave his requested rate undisturbed. *See* Petition and Memorandum in Support of Class Counsels' Application for Attorneys' Fees and the Reimbursement of Litigation Expenses at Exhibit B. Thomas Archie claims to charge $100.00 per hour even though he was only out of law school two years when

this lawsuit began. His vitae mentions no academic distinctions or prior experience which would support an hourly fee at the $100.00 level. Therefore, because the record contains no support for awarding compensation in the higher range of associate market rates in Milwaukee or Chicago, the court will reduce the proposed rates of Archie and all the other associates, except Aufmann, by twenty-five percent. *See Hensley v. Eckerhart*, 461 U.S. 424, 438 n. 13, 103 S.Ct. 1933, 1942 n. 13, 76 L.Ed.2d 40 (1983). The approved rates are:

| ATTORNEY | RATE/HOUR |
| --- | --- |
| Rotunno | $127.50 |
| Tyree | $ 75.00 |
| Doyle | $ 93.75 |
| Castiglione | $ 60.00 |
| Resnik | $ 93.75 |
| Archie | $ 75.00 |

Multiplying the approved hourly rates by the number of hours worked (minus hours disallowed) results in the following lodestar calculations:

Joyce and Kubasiak, P.C.

| LAWYER | RATE/HOUR | HOURS | LODESTAR |
| --- | --- | --- | --- |
| Edward T. Joyce | $250.00 | 94.30 | $ 23,575.00 |
| Arthur W. Aufmann | $115.00 | 366.10(−1.6) | $ 41,917.50 |
| Steven J. Rotunno | $127.50 | 51.10(−.3) | $ 6,477.00 |
| Colleen T. Tyree | $ 75.00 | 141.50 | $ 10,612.50 |
| John T. Doyle | $ 93.75 | 3.50 | $ 328.13 |
| Paul A. Castiglione | $ 60.00 | 7.50 | $ 450.00 |
| Gerald E. Kubasiak | $168.75 | 2.40 | $ 405.00 |
| Mark E. Resnik | $ 93.75 | 12.50 | $ 1,171.88 |
| Paralegals | $ 40.00 | 40.50 | $ 1,620.00 |
| Law Clerks | $ 40.00 | 258.10 | $ 10,324.00 |

Robert Silverstein & Associates, S.C.

| | | | |
| --- | --- | --- | --- |
| Robert Silverstein | $200.00 | 136.60(−1.1) | $ 27,100.00 |
| Thomas K. Archie | $ 75.00 | 663.74(−1.6) | $ 49,660.50 |
| | | TOTAL: | $173,641.51 |

### C. *Upward Adjustment*

Plaintiffs' counsel have asked the court to multiply the lodestar by 2.19 to compensate for the risk of nonpayment and to reflect the skill with which this litigation

was conducted and the substantial and favorable results obtained. These applicants have the burden of persuading the court that an upward adjustment to the lodestar is warranted. *See Blum v. Stenson*, 465

---

**10.** The court accepts these rates with the proviso that, because they are unsupported by evidence of actual awards, they will have no precedential effect on any other cases in this court.

U.S. 886, 898, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984); *In re Fine Paper Antitrust Litigation*, 751 F.2d 562, 600 (3d Cir.1984); *In re Flight Transportation Corporation Securities Litigation*, 685 F.Supp. 1092, 1095 (D.Minn.1987); *Fickinger v. C.I. Planning Corporation*, 646 F.Supp. 622, 635 (E.D.Pa.1986).

Courts in this circuit have used a twelve-factor [11] analysis to determine whether to make an adjustment to the lodestar. *See, e.g., Gekas v. Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois*, 793 F.2d 846, 852 (7th Cir.1986); *Lynch v. City of Milwaukee*, 747 F.2d 423, 426 (7th Cir.1984); *Squillacote v. United States*, 626 F.Supp. 127, 130 (E.D. Wis.1985); *In re Public Service Company of Indiana Securities Litigation*, 125 F.R.D. 480, 483 (S.D.Ind.1988). The twelve factors are:

1. the time and labor required;
2. the novelty and difficulty of the questions;
3. the skill requisite to perform the legal service properly;
4. the preclusion of employment by the attorney due to acceptance of this case;
5. the customary fee;
6. whether the fee is fixed or contingent;
7. time limitations imposed by the client or the circumstances;
8. the amount involved and the results obtained;
9. the experience, reputation, and ability of the attorneys;
10. the "undesirability" of the case;
11. the nature and length of the professional relationship with the client; and
12. awards in similar cases.

---

**11.** These factors were taken from the American Bar Association Code of Professional Responsibility, Disciplinary Rule 2–106 (1980).

**12.** These Supreme Court cases as well as many of the cases cited as authority throughout this Opinion involve fee shifting statutes each as 42 U.S.C. § 1988 rather than the "common fund

*Squillacote*, 626 F.Supp. at 130, citing *Lynch*, 747 F.2d at 426 (footnote omitted), citing *Hensley v. Eckerhart*, 461 U.S. 424, 430 n. 3, 103 S.Ct. 1933, 1937 n. 3, 76 L.Ed.2d 40 (1983).

In a series of more recent decisions [12] the United States Supreme Court has disfavored basing an upward adjustment of the lodestar on "factors usually ... subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9. These "quality of representation" factors include: the time and labor required; the novelty and difficulty of the questions; the skill requisite to perform the legal services properly; the customary fee; the amount involved and the results obtained; the experience, reputation and ability of the attorneys; and, awards in similar cases. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986); *Blum v. Stenson*, 465 U.S. 886, 898–900, 104 S.Ct. 1541, 1548–50, 79 L.Ed.2d 891 (1984); *Squillacote v. United States*, 626 F.Supp. 127, 131 (E.D.Wis. 1985).

In *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), the Supreme Court explained that:

> [W]hen an attorney first accepts a case and agrees to represent the client, he obligates himself to perform to the best of his ability and to produce the best possible results commensurate with his skill and his client's interests. Calculating the fee award in a manner that accounts for these factors, either in determining the reasonable number of hours expended on the litigation or in setting the reasonable hourly rate, thus adequately compensates the attorney, and leaves very little room for enhancing the

---

doctrine." However, to the extent that the Seventh Circuit requires applying the lodestar approach to fee petitions in both types of cases, many of the same general standards apply. *See Skelton v. General Motors Corporation*, 860 F.2d 250, 253 (7th Cir.1988), *cert. denied*, —— U.S. ——, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989).

award based on his post engagement performance. In short, the lodestar figure includes most, if not all, of the relevant factors constituting a "reasonable" attorney's fee....

*Id.* 478 U.S. at 565–66, 106 S.Ct. at 3098–99. The Court then reaffirmed its position that an upward adjustment for the superior quality of counsel's performance is only justified in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was exceptional. *Delaware Valley Citizens' Council for Clean Air,* 478 U.S. at 566–68, 106 S.Ct. at 3098–3100. *See Id.* at 566, 106 S.Ct. at 3098, citing *Blum v. Stenson,* 465 U.S. at 898–902, 104 S.Ct. at 1548–51.

The second time the Supreme Court considered the *Delaware Valley* case, four of the Justices decided that in a fee shifting case an upward adjustment to the lodestar could be allowed to compensate for the contingent nature of the litigation. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711, 715–31, 107 S.Ct. 3078, 3081–89, 97 L.Ed.2d 585 (1987). However, they cautioned that the standard for employing a risk multiplier should be the same as that for employing a performance multiplier:

> [P]ayment for the time and effort involved—the lodestar—is presumed to be the reasonable fee authorized by the statute, and enhancement for the risk of nonpayment should be reserved for exceptional cases where the need and justification for such enhancement are readily apparent and are supported in the record and specific findings by the courts.

*Delaware Valley Citizens' Council for Clean Air,* 483 U.S. at 728, 107 S.Ct. at 3088 (footnote omitted), citing *Blum,* 465 U.S. at 898–901, 104 S.Ct. at 1548–50. The factors the Justices would consider in awarding a risk adjustment are: (1) the risk of nonpayment as determined at the beginning of the litigation and (2) whether, without risk-enhancement, the plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market. *See Delaware Valley Citizens' Council for Clean Air,* 483 U.S. at 729–31, 107 S.Ct. at 3088–89. Finally, the four Justices directed that:

> [I]f the trial court specifically finds that there was a real risk of not prevailing in the case, an upward adjustment of the lodestar may be made, but as a general rule, in an amount no more than one-third of the lodestar. Any additional adjustment would require the most exacting justification. This limitation will at once protect against windfalls for attorneys and act as some deterrence against bringing suits in which the attorney believes there is less than a 50–50 chance of prevailing. Riskier suits may be brought, and if won, a reasonable lodestar may be awarded, but risk enhancement will be limited to one-third of the lodestar, if awarded at all.

*Id.* at 730, 107 S.Ct. at 3089.

It must be reiterated that the *Delaware Valley* cases were governed by fee shifting statutes rather than the common fund doctrine. The differences between the two types of cases are significant when risk multipliers are under consideration. In the wake of *Delaware Valley I* and *II,* the Seventh Circuit explained that:

> [T]he arguments equitable and statutory—against risk multipliers in statutory fee cases have much less application in common fund cases.
>
> . . . .
>
> In a common fund case, where there is no direct or immediate danger of unduly burdening the defendant, a court has more latitude in exercising its equitable powers to determine whether the plaintiff class should compensate its attorneys for their risk of nonpayment. And it remains arguable that, at least in the common fund context, attorneys whose compensation depends on their winning the case, must make up in compensation in the cases they win for the lack of compensation in the cases they lose.

*Skelton v. General Motors Corporation,* 860 F.2d 250, 254 (7th Cir.1988), *cert. denied,* — U.S. —, 110 S.Ct. 53, 107

L.Ed.2d 22 (1989). The factors relevant to the court's exercise of this equitable power are:

1. Analysis of plaintiff's burden—considering the legal and factual complexity of the case, the probability of defendant's liability, whether damages would be difficult or easy to prove; [13]

2. Risks assumed in developing the case—number of hours and out-of-pocket expenses risked without guaranteed compensation; and

3. Delay in receipt of payment for services rendered.

*Feuerstein v. Burns,* 569 F.Supp. 268, 276 (S.D.Cal.1983) (securities fraud class action litigation). *See also Lindy Brothers Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corporation,* 540 F.2d 102, 126–28 (3d Cir. 1976) (antitrust litigation).

The court must now apply these directives to the cases at hand to determine whether an upward adjustment of the lodestar is warranted. In support of their request for an upward adjustment of 2.19, class counsel argue that:

> These petitioners obtained a settlement of this litigation by creating a $5,000,000 settlement fund less than 1½ years after the cases were filed—an excellent result. This settlement succeeds in providing immediate and substantial compensation for the class members, many of whom are elderly and on fixed incomes, who would otherwise face the risk of additional pretrial motions and trial, and the further risk and delay attended to an appeal after trial even if class counsel were able to secure a judgment. Moreover, based upon class counsel's investigation, the defendants who faced the greatest exposure to a judgment against them have insufficient assets to satisfy such a judgment. In contrast, the defendant which faced the least exposure to a judgment, Security Savings, is financing the entire settlement.
>
> Therefore, by assuming the risk inherent in all litigation which is conducted on a contingent fee basis and by securing a substantial and favorable result, class counsel have earned an upward adjustment of the lodestar. Such an upward adjustment would also acknowledge that success in this litigation was vigorously opposed by skilled and prestigious counsel, and that class counsel accepted the additional burden/risk of maintaining a RICO class action where some of the predicate acts were violations of the securities laws and the nature of the alleged fraud was oral rather than written. For all of the above reasons, petitioners respectfully request a multiplier of approximately 2.19, and a fee award in the amount of $500,000.

Petition and Memorandum in Support of Class Counsels' Application for Attorneys' Fees and the Reimbursement of Litigation Expenses at 15.

■ On the basis of this presentation, counsel have not met their burden of persuading the court that any multiplier is warranted for the superior quality of their work. All relevant quality factors on which counsel has made a showing [14] were subsumed in the calculation of the lodestar. The court approved all but 235.10 of the hours claimed and the rates requested were considered to the extent that they were supported by evidence of each profession-

---

13. Under *Delaware Valley II,* a statutory fee shifting case, "compensation for contingency must be based on the difference in market treatment of contingent fee cases as a class, rather than on an assessment of the 'riskiness' of any particular case." *Delaware Valley Citizens' Council for Clean Air,* 483 U.S. at 731, 107 S.Ct. at 3089 (O'Connor, J., concurring). *See also Blum v. Witco Chemical Corporation,* 888 F.2d 975 (3d Cir.1989). However, this court knows of no case in which this stringent showing has been required of a fee applicant who is to be paid from a common fund.

14. The fee applicants have made no showing bearing on four of the twelve factors: the preclusion of employment by the attorney due to acceptance of this case; time limitations imposed by the client or the circumstances; the "undesirability" of the case; and, the nature and length of the professional relationship with the client. Therefore, the court must assume that none of these factors would support an adjustment of the lodestar.

al's experience, reputation, ability and customary current billing rate. *See Skelton*, 860 F.2d at 255 n. 5 ("[A] multiplier may not be the best method for compensating attorneys for the superior quality of their work. This should be reflected in the lodestar in the form of a high hourly rate."). Moreover, delay in payment from the commencement of this litigation to the filing of the fee petition has already been compensated by using the professionals' current hourly rates as the base figures for any adjustments. The remaining question, then, is whether a risk multiplier is warranted.

■ Class counsel say that they accepted these cases on a "contingent fee basis." [15] Petition and Memorandum in Support of Class Counsels' Application for Attorneys' Fees and the Reimbursement of Litigation Expenses at 15. Therefore, they assumed the risk of nonpayment if there was no monetary recovery.

Risk must be measured at the point when the attorneys' time was committed to the case. *See In re Fine Paper Antitrust Litigation*, 751 F.2d 562, 583 (3d Cir.1984). Thus, a risk multiplier cannot be denied solely where, as here, the parties settled at a relatively early stage in the litigation. *See Skelton*, 860 F.2d at 258. Early settlement is reflected by fewer hours in the lodestar than would have accumulated had the cases gone to trial. *See Id.*

Counsel were aware when they filed these cases that they would face a substantial threshold hurdle in overcoming a statute of limitation defense. RICO actions must be commenced within four years of the date upon which the cause of action accrues. *See Agency Holding Corporation v. Malley–Duff & Associates*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). Yet, the Purdys and Galecke purchased their limited partnership interests in 1983 and did not file their lawsuits until 1988. Thus, the dispositive issue was when the plaintiffs' causes of action accrued. This

court denied the defendants' Motion for Summary Judgment and to Dismiss on the basis of decisions of the Second and Third Circuits which were not issued until after the commencement of the *Purdy–Galecke* actions. *See Keystone Insurance Company v. Houghton*, 863 F.2d 1125 (3d Cir. 1988) (adopting a "last predicate act" accrual rule for cases in which there are multiple injuries and multiple victims); *Bankers Trust Company v. Rhoades*, 859 F.2d 1096 (2d Cir.1988) (adopting Clayton Act rule of accrual under which the cause of action does not accrue until a defendant commits an act that injures the plaintiff's business), *cert. denied*, —— U.S. ——, 109 S.Ct. 1643, 104 L.Ed.2d 158 (1989) and *cert. denied sub nom. Soifer v. Bankers Trust Company*, —— U.S. ——, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

Another potentially fatal issue in the cases was whether, in order to satisfy the RICO pleading requirements for continuity and pattern, the plaintiffs had to allege that the defendants carried out two separate schemes to defraud. This issue was not resolved until after the settlement hearing when the United States Supreme Court issued its opinion in *H.J. Inc. v. Northwestern Bell Telephone Company*, —— U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (plaintiffs need not allege two separate schemes, but must plead and prove at least two predicate acts that are related and amount to, or pose a threat of, continued criminal activity). Thus, at the time the plaintiffs' attorneys' time was committed to these cases, recovery was highly uncertain—not because the issues were novel, but because they had already been hotly contested in lower courts and were then before reviewing courts where the outcome could not be known until after the complaints were filed.

Meanwhile, the two law firms committed hundreds of hours over the course of nine months to litigating the *Purdy* case until the defendants' dispositive motion was denied.[16] Even with this initial victory, the

---

**15.** Despite this assertion, counsel has presented no evidence of any retainer agreements and no evidence of what, if any, percentage of any recovery any of the plaintiffs agreed to pay.

**16.** No answer or other response had been filed in the *Galecke* case and no proceedings had been scheduled prior to transfer to this court for purposes of consolidation.

plaintiffs' counsel could not be assured that subsequent decisions of the Supreme Court or the Seventh Circuit would not supplant the rulings of the Second and Third Circuits. Counsel also point out that their strongest legal and factual case was against defendants with insufficient assets to satisfy a judgment. Therefore, monetary recovery was at risk even if liability could be established. For all these reasons, success was not assured until the settlement was actually approved at the hearing in August of 1989. Consequently, the court believes that this high degree of risk of nonpayment should be reflected in an upward adjustment to the lodestar.

Two policy considerations also weigh in favor of awarding a risk multiplier. First, one of the chief criticisms of the lodestar-multiplier approach to common fund fee petitions is that attorneys might be tempted to string out the litigation in order to increase the lodestar hours. Instead, the *Purdy–Galecke* fee applicants brought these actions to a close approximately fifteen months after filing their complaints. The litigation was terminated by settlement, thereby avoiding burdening the taxpayers and the federal judicial system with trials and appeals. "[A] prompt and efficient attorney who achieves a fair settlement without litigation serves both his client and the interests of justice." *McKenzie Construction Company v. Maynard*, 758 F.2d 97, 101–02 (3d Cir.1985). *See also In re King Resources Company Securities Litigation*, 420 F.Supp. 610, 631 (D.Colo.1976) (" 'A surgeon who skillfully performs an appendectomy in seven minutes is entitled to no smaller fee than one who takes an hour; many a patient would think he is entitled to more.' ") (quoting Hornstein, *Legal Therapeutics: The "Salvage Factor" in Counsel Fee Awards*, 69 Harv.L.Rev. 658, 660 (1956).) Second, courts have recognized that:

> The award of attorneys' fees in complex securities class action litigation is informed by the public policy that individuals damaged by violations of the federal securities laws should have reasonable

access to counsel with the ability and experience necessary to analyze and litigate complex cases. Enforcement of the federal securities laws should be encouraged in order to carry out the statutory purpose of protecting investors and assuring compliance. *See Bateman Eichler v. Berner*, 472 U.S. 299, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985). A large segment of the public might be denied a remedy for violations of the securities laws if contingent fees awarded by the courts did not fairly compensate counsel for the services provided and the risks undertaken.

*In re Union Carbide Corporation Consumer Products Business Securities Litigation*, 724 F.Supp. 160, 169 (S.D.N.Y. 1989). Class counsel in the *Purdy–Galecke* cases have made no showing that there is a shortage of attorneys willing to undertake securities fraud lawsuits. However, it is evident that an individual investor would have a difficult time finding affordable representation, even on a contingent basis, to attempt to litigate a case based on a single investment.

Under these circumstances and with these policy considerations in mind, the court believes that class counsel have met their burden of establishing that a risk multiplier is warranted. Class counsel ask for a multiplier of 2.19, but, in *dicta*, the Seventh Circuit has suggested that: "It may be that a doubling of the lodestar would provide a sensible ceiling. It would certainly address the concern that extremely risky cases (those bordering on the frivolous) not warrant extremely large risk multipliers." *Skelton*, 860 F.2d at 258. Therefore, in the absence of any additional unusual risk factors in the record and in view of the court's duty to protect the interests of the class members in the Settlement Fund, the court hesitates to exceed the suggested ceiling.

■ The court will apply an upward adjustment of 2.00 to the lodestar fees of the partners and associates.[17] At $40.00 per

---

17. The fee applicants have presented no evidence of multipliers awarded in similar litiga-

tion, but the court believes that the 2.00 multiplier is reasonable and adequate compared to

hour the paralegals and law clerks are being compensated at adequate rates,[18] particularly when many of their described tasks, such as copying cases, were clerical in nature rather than work which might otherwise have been performed by a lawyer. Consequently, the paralegal fees will not be enhanced. *See Feuerstein v. Burns,* 569 F.Supp. 268, 274 (S.D.Cal.1983). *See also In re Illinois Congressional Districts Reapportionment Cases,* 704 F.2d 380, 382 n. 2 (7th Cir.1983) (affirming use of a multiplier in a case where it was not applied to paralegal work).

The level of this risk multiplier includes consideration for delay in payment from the date the Settlement Fund was created until the date of distribution. This consideration is meant to be in lieu of awarding the law firms a proportionate share of the interest which the Settlement Fund has earned pending distribution. *Cf. In re Fine Paper Antitrust Litigation,* 751 F.2d 562, 589 (3d Cir.1984).

Applying an upward adjustment of 2.00 to the lodestar fees of the partners, associates and law clerks and adding the unadjusted approved fees of the paralegals, the court will award the plaintiffs' two law firms [19] the following amounts:

Joyce and Kubasiak, P.C.: $181,818.02

Robert Silverstein & Associates, S.C.: $153,521.00

for a total attorney fee award of $335,339.02 to be paid from the Settlement Fund.

## III. EXPENSES

In addition to the attorney fees, class counsel have requested that the following disbursements be paid from the Settlement Fund:

### Joyce and Kubasiak, P.C.

| | |
|---|---|
| Copying charges | $ 831.30 |
| Sprint telephone charges | $ 231.07 |
| Court costs | $ 132.00 |
| Westlaw research | $ 3,130.50 |
| Telecopying charges | $ 194.00 |
| Messenger delivery charges | $ 186.75 |
| Travel expenses | $ 756.35 |
| Court reporter fees | $ 1,100.80 |
| Docket maintenance fee | $ 15.00 |
| Special postage | $ 6.49 |
| Reimbursement to Robert Silverstein & Associates for costs advanced | $ 286.89 |
| SUBTOTAL | $ 6,871.15 |

### Robert Silverstein & Associates, S.C.

| | |
|---|---|
| Court costs | $ 270.00 |
| Court reporter | $ 878.45 |
| FAX | $ 18.95 |
| Federal Express | $ 78.75 |
| Photocopying | $ 748.32 |
| Photographer | $ 20.00 |
| Postage | $ 384.50 |
| Private Investigator | $ 850.12 |
| Process Server | $ 57.00 |
| Special Delivery | $ 8.50 |
| Telephone | $ 373.91 |
| Travel Expenses | $ 1,436.86 |
| Video charges re: Property | $ 42.00 |
| Witness fees | $ 71.00 |
| Working dinners | $ 116.63 |
| Recaptured Costs | [$ 1,137.01] |
| SUBTOTAL | $ 4,217.98 |
| | $ 6,871.15 |
| TOTAL DISBURSEMENTS | $11,089.13 |

Except for the tab for "working dinners,"[20] these are the type of out-of-pocket expenditures which other courts have allowed to be reimbursed to class counsel from common funds, but only if the expenses are adequately explained and documented. *Compare Sala v. National Railroad Passenger Corporation,* 128 F.R.D. 210 (E.D.Pa. Nov. 13, 1989) (court finds expenses adequately documented, proper, and reasonable); *Fickinger v. C.I.*

---

multipliers currently being awarded in securities cases in this circuit. *See, e.g., In re Public Service Company of Indiana Securities Litigation,* 125 F.R.D. 480, 483 (S.D.Ind.1989) (1.61 found to be reasonable multiplier in class action pending four years).

**18.** A mere two years ago the Seventh Circuit approved a $30.00 hourly rate for paralegals employed by a Chicago firm. *See Spanish Action Committee of Chicago v. City of Chicago,* 811 F.2d 1129, 1138 (7th Cir.1987).

**19.** Fee awards must be paid to the respective law firms, not the individual attorneys and paralegals. *See In re Burlington Northern, Inc. Employment Practices Litigation,* 810 F.2d 601, 609 (7th Cir.1986), *cert. denied sub. nom. Spranger; Olson & Shutes v. Burlington Northern Railroad Company,* 484 U.S. 821, 108 S.Ct. 82, 98 L.Ed.2d 44 (1987).

**20.** *See Campaign for a Progressive Bronx v. Black,* 631 F.Supp. 975, 983 (S.D.N.Y.1986) (restaurant tab disallowed as unreasonble expense).

*Planning Corporation,* 646 F.Supp. 622, 631 (E.D.Pa.1986) (approving itemized costs and expenses for which receipts produced or of which court had knowledge); *with In re Wicat Securities Litigation,* 671 F.Supp. 726, 742 (D.Utah 1987) (expenses reduced for failure to articulate and support value and reasonableness); *Cantor v. Detroit Edison Company,* 86 F.R.D. 752, 770–71 & n. 14 (E.D.Mich.1980) (undocumented expense items disallowed).

■ In this case the expenses are merely listed and identified in generic terms. They are neither explained nor documented, so they must be disallowed. However, if the applicants submit adequate documentation (e.g. receipts or business records) and explanations of the expenses within three (3) working days of the date of this Order, the court will consider amending the judgment to order reimbursement for these expenses.

### ORDER

Based on the Settlement Agreement of the parties and the Opinion set forth above, the court ORDERS that the plaintiffs' law firms are awarded the following amounts from the Settlement Fund as attorney fees:

Joyce and Kubasiak, P.C.: $181,818.02

Robert Silverstein & Associates, S.C.: $153,521.00

IT IS FURTHER ORDERED that, as soon as practicable following the date of this Order, plaintiffs' counsel shall cause the Settlement Fund, together with accrued interest thereon, to be distributed in accord with the terms of the Settlement Agreement.

IT IS FURTHER ORDERED that Civil Action No. 88–C–313 IS DISMISSED with prejudice.

IT IS FURTHER ORDERED that Civil Action No. 88–C–405 IS DISMISSED with prejudice.

IT IS FURTHER ORDERED that that, pursuant to Federal Rule of Civil Procedure 58, the Clerk of Court shall enter judgment in these two consolidated cases as a separate document. This judgment shall provide that:

These consolidated class actions came on for hearing before the Court, the Honorable Thomas J. Curran, District Judge, presiding, and the Court having approved the parties' Settlement Agreement, It is ORDERED AND ADJUDGED

A. That the Settlement Class for all purposes contemplated by the Settlement Agreement shall be defined as "all of the original purchasers or one or more limited partnership interests in Security Spring & Boe Investors, Ltd. 82 and/or Security Investors, Ltd. II and their respective transferees;" and, for purposes of the final distributions from the Settlement Fund, as "all persons, other than the defendants, who were the original purchasers of one or more limited partnership interests in Security Spring & Boe Investors, Ltd. 82 and/or Security Investors, Ltd. II excepting any person who had asserted a claim against any of the Defendants based upon that person's purchase of limited partnership interest(s) in either of the Partnerships and has executed a release of one or more of the Defendants in compromising such claim."

B. The Settlement Agreement dated June 12, 1989, is hereby approved as being fair, reasonable and adequate.

C. The Complaints in cases 88–C–313 and 88–C–405 are dismissed on their merits and with prejudice.

D. The Class Representatives and the Settling Class Members shall forever be barred and enjoined from instituting or further prosecuting in any forum whatsoever, including, but not limited to, any state, federal or foreign court, any cause of action against Defendants, their corporate parents, subsidiaries, successors, assigns and their respective past or present officers, directors or partners relating to, arising out of or derived from the purchase or ownership of limited partnership interests in Security Spring & Boe Investors, Ltd. 82 or Security Investors, Ltd. II.

E. Defendants and the corporate parents, subsidiaries, successors and assigns and their respective past or present officers, directors and partners shall forever

be barred and enjoined from instituting or further prosecuting in any forum whatsoever, including, but not limited to, any state, federal or foreign court, any cause of action against the Class Representatives and the Settling Class Members relating to the purchase or ownership of limited partnership interests in Security Spring & Boe Investors, Ltd. 82 and/or Security Investors, Ltd. II.

F. The General Partners of Security Spring & Boe Investors, Ltd. 82 and of Security Investors, Ltd. II hereby are authorized to sell the real estate and associated equipment and personal property owned by each of the said partnerships, for cash and subject to any existing mortgages or encumbrances thereon, to Security Savings & Loan Association, or its designee, as follows:

Security Spring & Boe Investors, Ltd. 82; for $499,230.50; and Security Investors, Ltd. II; for $500,769.50;

and, upon completion of such sale, to proceed with the liquidation and dissolution of said partnerships.

IT IS FURTHER ORDERED AND ADJUDGED that the plaintiffs' law firms are awarded the following amounts from the Settlement Funds as attorney fees:

Joyce and Kubasiak, P.C.: $181,818.02

Robert Silverstein & Associates, S.C.: $153,521.00

IT IS FURTHER ORDERED AND ADJUDGED that, as soon as practicable following the date of this Judgment, plaintiffs' counsel shall cause the Settlement Fund, together with accrued interest, to be distributed in accord with the terms of the Settlement Agreement.

IT IS FURTHER ORDERED that Civil Action No. 88–C–313 IS DISMISSED with prejudice.

IT IS FURTHER ORDERED that Civil Action No. 88–C–405 IS DISMISSED with prejudice.

Done and Ordered.